Jones, C. J.,
delivered the opinion of the Court. Charles Gatfield, by his will, dated April, 1798, devised as follows: “I give “ and bequeath to my wife Sarah all my estate real and personal “ during her life. The house and lot No. 37, situate in Mulberry-street, containing in front 20 feet, in rear 15 feet, in depth 95 “ feet, to my heirs Maria and Eliza Gatfield in fee-simple for- “ ever: if one of them should die, the property to descend on the “ other; in case both should die, the property to descend on my “ wife Sarah, only she is to pay to my brother Archibald Gatfield, on shilling if demanded.” The testator died in 1798.
Maria died in childhood; Eliza attained 21, married, and after-wards died in the lifetime of her mother without leaving or ever having had any lawful issue, and without making any disposition of the property. Her husband also died in the lifetime of the testator’s widow.
*7 The widow, in 1798, shortly after her husband’s death, married one Strang, by whom she had issue, five children, who are her heirs at law. She continued in possession of the premises until 1827, when she died. After her death, this suit was brought by Archibald Gatfield, who is the heir at law of the testator and of his surviving daughter Eliza, against the defendant, who is one of the children, and heirs at law of the widow.
The question is whether, by the will of the testator the remainder in fee of the premises, oh the death of his daughter Eliza, descended to the plaintiff as heir at law of the testator, or vested in the widow 1 and the solution of this question depends on the validity and legal effect of the limitations or devises over of the inheritance, in the events contemplated by the will.
The widow and two daughters survived the testator; and on his death the devises to the wife for her life, and to the daughters after her death in fee, subject to the limitations over, took effect. Upon the death of Maria, the daughter who first died, her moiety of the estate either accrued to the sister by the limitation of the will, or descended to her as heir at law. The surviving daughter, Eliza, consequently became vested, on the death of her sister, with the whole. But she died without issue, and in the lifetime of her mother •; and that event brings up the question upon the limitation or devise over to the mother. By the terms of that devise, in case both of the daughters should die, the property was to descend on the testator’s wife. In what sense were the words “in “ case both should die” used by the testator 1 Did he intend to refer to the death of the daughters generally, whenever such death should happen 1 or was it his intention to refer to the .event of death within some given time, or under some special circumstances 1 On the literal, grammatical construction of the terms, they would refer to the death of the devisees, without any qualification whatever; but on that construction, the daughters could in no event take a larger interest under the will than an estate for life; for the event of their death, on which the fee in terms devised to them would in that case be limited over to the wife, was certain to happen. It was absolutely certain that both daughters would die; and the inheritance must go upon *8 the detail of the survivor of them to their mother, or her heirs. Could that have been the intention of the testator 1 He in express terms devised the remainder of his estate to his daughters in fee-simple -forever. He could not surely intend to- destroy, by the devise over to the wife, the estate which he had created by the previous devise to the daughters, by cutting down the 'fee expressly given them to an estate for life. Or, if such were his intention, would the. established rules of law allow it to prevail? It is a well-settled, rule, that where a limitation or devise over, so directly conflicts' with the first or principal devise, that both cannot by any rational construction stand together, the limitation, or devise over, must be rejected as Void for repugnancy. Now; the limitations of this will, if the event on which they are to arise is the death of the daughters, without restriction of time, place, or circumstance, must necessarily displace the devise to them of the inheritance, and reduce' their interests to estates for life.. Such a construction would render the words “ in fee-simple forever,” annexed to the devise to the daughters, wholly inoperative. It would disappoint the just expectations of the immediate and most natural object of the testator’s bounty ; and it would-moreover inevitably disinherit all the children and lawful issue of the daughters, and substitute the heirs of the wife of the testator in their place. We should unsettle the best established rules of construction, contravene the express language of the will, and violate all probability, if we imputed such intentions to the testator; and unless the terms used by him are susceptible of some other exposition, we might, perhaps, find it difficult to sustain the devise over to the wife. But in expounding wills, effect is to be given to every disposition and limitation of the testator, if the whole will, taken together, will admit of such a construction. If, therefore, the words employed by the testator to designate the event on which the devise over is to take, effect, can be understood in. any restricted or qualified sense, so as to reconcile the limitation over with the previous devises, a just regard ta.the intention of the testator requires, that they should be so understood. And I assume the position, that the testator, when he referred to the death of one of his daughters as the event upon which the other was to take the whole, and to the *9 death of both as the event upon which the estate given to them in fee was to go over to his wife, must have intended to refer to that event in connection with some contingency, which he had in his mind at the time, but has omitted to express. Indeed, besides the incongruity of ideas imputable to him in devising the same estate to the same persons, in fee, and for life, the terms in which he expressed himself import contingency, and require the application of the words to some uncertain event to make them intelligible. The words “in case,’’ and the word “ should,” are inapplicable, and without meaning, if he intended to speak simply of the event of death which was sure to happen; but they were appropriate terms if intended to apply to the death of the daughters without issue, or within any limited period of time, as his own life, for example, or the life of his wife, either of which would be an uncertain and contingent event, and might happen or might fail to happen. A||uming, then, as I do, that the hypothetical phrase, “in case both should die,” must be understood to have some limit or qualification, the question presents itself, what that. limit or qualification ought to be. This is a question of intention, upon which we must exercise our best judgment, from the lights afforded us by the indications appearing on the face of the instrument, and by the circumstances under which the will was made, as disclosed in the case; with these guides we are to discover the probable intention of the testator, and that exposition is to be preferred which, keeping within the rules of law, will best subserve the general intent, and lead to the most satisfactory results, as respects the particular devises.
' This view of the subject seems to be taken by the parties themselves. They both agree that the death of the daughters simply could not be the event on which the estate was to go over to the wife; but suppose that their death within a limited period of time was the contingenpy he had in contemplation, and each of them presents his own exposition, the plaintiff contending that the contingency contemplated by the testator was the death of the devisees in his own lifetime, and that the object of the limitation over to the wife was to prevent the devise from lapsing; but the de *10 fendant insisting, that the death of the daughters in the lifetime of the wife was the contingency which the testator had in view, and that his intention was to limit the estate to his wife absolutely, and prevent the descent of it to the collateral heir, in the event 0y }ier surviving both her daughters. These several expositions have been defended by the respective advocates with great inginuity and ability. Neither of them is free from objection; and the difficulties which surround them both urge strongly the preference of another qualification, founded on a different principle^ and which will be hereafter considered. The argument in favour of restricting the event of death to the lifetime of the testator is, that the limitation on that construction trenches least on the fee previously devised to the daughters, and operates as a provision for the single case of lapse of the devise by the death of the daughters in the lifetime of the testator.
But the objections to that exposition are, j|iat it reduces the devise over to the wife to nearly a nugatory and senseless provision, and, as regards the first devisees in fee, can in no turn of events be of any use or benefit to themselves, but might work injustice to their issue by excluding them from the inheritance. The only object of a limitation to the wife, in the event of the death of the daughters in the lifetime of the testator, is conceded to be, to guard against a lapse of the devise. But as regards the first limitation between the daughters in the event of the death of one of them in the lifetime of the other, and before the death of the testator, the estate of the deceased would, without any devise over, either accrue to the surviving sister, in which case its operation would be the same as that of an express limitation to the survivor: or it would descend to the sister as heir at law of the testator; .and in that case it would be more favourable to the sister who should happen to die, as it would keep open the door to let in her issue to partake of the inheritance. No such limitation over by will to the wife was necessary therefore, or of any utility to provide for that contingency. Would it be more operative, or useful, as a provision for the case of the death of both daughters in the testator’s lifetime 1 In that case it is said the whole devise to them would lapse. Let it be con *11 ceded that the devise would lapse; must not the consequence be, that the estate subject to the life estate of the wife would descend to the issues of the daughters, if they left any, as the heirs at law of the testator ? And if so, the lapse would be more beneficial and desirable to them than the limitation over. But even if the effect of the lapse could be to disinherit the issue of the daughters, still that consequence would not be obviated by the limitation over to the widow, for its operation would be to vest the inheritance in her, in exclusion of the issue of the daughters. What inducement could the testator have for a provision so useless to the first objects of his bounty, and which might operate so severly upon his grand-children?
It appears by the case that the testator made his will in the latter end of April in the year 1798, and died the same year.
Whether the will was made in the last illness of the testator, or when he was in health, does not distinctly appear: the will itself is silent on the subject; but while it represents the testator to be of sound mind and memory, it does not state him to be in good bodily health; and, perhaps, the fair intendment may be that the will was made in the immediate contemplation of approaching death, and was intended to settle his worldly affairs preparatory to that event.
And if so, the limitation to the wife upon the death of both his children before himself would be entirely illusory as a provision for her, and nugatory as a safe-guard for them: And if the will was made by the testator when in perfect health, and not in the immediate prospect of death, such a limitation would be comparatively of little value to the wife, for she could never profit it by it unless both the daughters died in the lifetime of the testator, and she survived him; events which, under the circumstances of the supposed, case, could not be expected all of them to concur. Besides, he had already given her his whole estate for the term of her life, which he contemplated her to take at his death; and his ulterior dispositions would more probably have a prospective view to the termination of that estate, than to his own death; his general intention was to confer his whole estate upon his wife for her life, and to transmit it after *12 her death to his children; but in the event of the failure of his own issue to inherit, his ulterior intention was to substitute his w¡fe jn their place as the next object of his bounty, and to prefer her to his collateral heir; these intentions are clearly to be collected from the will; and is it probable, that with such views he would restrict the limitation in favor of his wife, on the failure of his issue, to the contingency of the death of the daughters in Ms own lifetime 1 The consequence of such a restriction would be, that his whole scheme for the settlement of his estate would be defeated if either of his daughters happened to survive him; for the devise to the surviving daughter would in that event become absolute, and the limitation over to the wife could never take place, but the whole estate, on the death of the daughter subsequently without issue, if undisposed of by her, would descend to the collateral heir, and in no degree benefit the widow. Could the testator intend to confer the inheritance upon Ms wife to the exclusion of his collateral heir, in the event of the death of both his daughters in his own lifetime, and yet mean, that if either of them survived him, his widow should be confined to her life estate, and the inheritance in case of the failure of his own issue descend to his collateral heir 1 Intentions so inconsistent and improbable cannot be ascribed to him, unless imperatively called for by the expressions of his will. His motives Tor preferring his wife to his brother and collateral heir, would be the same whether his daughters died in his lifetime or survived him; and as he has so unequivocally manifested his intention that the inheritance primarily devised to his children, and obviously intended for his own issue, in preference to all others, should, in the event of the failure of such issue, devolve upon his wife as the next object of his favor, we must in determining the true sense of the terms he has employed to express meaning, and which are admitted to be susceptible of different significations, give the preference to that which will best effectuate such general intentions: And if this rule is to govern, cannot, surely, restrict the contingency of the death of the daughters to the lifetime of the testator, when the words he has employed are as well satisfied by extending it to the period of *13 the death of the wife, and when the narrower construction so materially interferes with the probable views of the testator.
But it is contended, that the legal sense of the terms of this contingency has already been settled to be a dying in the testator’s lifetime. And we are referred to a series of decisions upon bequests of personal property as settling the rule of construction applicable to such a limitation. It is conceded that the cases cited at the bar, and others in the English Courts of still more modern date, have adopted and established it as a general rule for expounding bequests of personal property, that when the words “ if he (the legatee) should die,” or the words “in case of death,” are used by a testator, to signify the event on which a limitation over is to take effect, and those words are unexplained by the testator, and without qualification, they shall be construed to import the contingency of the death of the legatee before the testator. But this is a rule for the construction of personal bequests.
I have seen no case in which it has been applied to a devise of land; and while the books abound with examples of gifts of personal property, which have been settled by that rule of construction, not a solitary instance has been produced of a similar decision in the case of a devise of real estate.
Does not this view of the cases tend to the conclusion, that the rule refers to personal bequests exclusively, and is inapplicable to devises of land 1
But it is urged, that as the rule refers to a question of intention, the same terms must be understood in the same sense when applied to real, as when applied to personal property; and the argument receives countenance from the opinion of Lord Kenyon in the case of Porter v. Bradly, cited from 3 D. & E. p. 145.
In his comments in that case, upon the words “ dying without issue,” he adverts to the distinction taken in Forth v. Chapman, between the construction of that phrase when applied to chattels, and when to freehold interests, and observes, that it would be very strange if those words had a different meaning when applied to real estates, from what they have when applied to personal property; he disapproves the distinction, and denies it to be law.
*14 But these dicta being uncalled for by the case then before the court, they do not carry with them the force of authority.
And, notwithstanding the weight of Lord Kenyon’s obiter opinion, the distinction between the legal sense of those terms, according to the interests to which they refer, is firmly established.
The reason of the distinction is found in the difference between the properties of real and personal estate; and an attentive consideration of the nature and properties of the two species of estates will satisfy us that it rests upon solid grounds. The intention of the testator in such a limitation, whatever the estate may be to which it is applied, is to provide for all the issue of the devisee as long as he shall have any, and after the failure of issue, to transfer the estate to the next object of his bounty. That purpose is accomplished in devises of estates of inheritance by construing the words, “ dying without issue” to import an indefinite failure of issue, and to create an estate tail in the immediate devisee, with a remainder in fee to the devisee in remainder. But a chattel cannot be entailed; and the words of the devise, -when chattel interests are the subject of them, must receive a different construction, or they will be inoperative. The intention must in that case bend to the rules of law, in order to preserve the limitation, and give it effect. In a devise, therefore, of real and personal estate to A., and in case of his death without lawful issue to B., the words without “ lawful issue,” when referred to the inheritance, would be construed an indefinite failure of issue, and create an estate tail in A. with remainder in fee to B.; but in reference to the personal estate, they would be held to mean a failure of issue at the death of A., and vest in B. an interest by way of executory devise.
In Forth v. Chapman, (1 Peere, Wms. 663.) this distinction was recognised and established. The devise there was of estates of inheritance and leasehold interest to two nephews of the testator, with a devise over, in the contingency of the death of either without issue of his body: the Chancellor held it a valid limitation; ruling, that the construction as to the freehold estates should be the dying of the nephews without issue general *15 ly, by which there might be at any time a failure of issue; and with respect to the leasehold, the same words should be intended to signify a dying without leaving issue at the time of the death and he said that it might be reasonable enough to take the same words as to different estates in different senses. The principle of that case has been uniformly sanctioned, and always acted upon in after times. Lord Kenyon himself, in Goodtitle v. Pegden, 2 Term. Rep. p. 720., assumes as the ground of his judgment, that the distinction in Forth v. Chapman had remained unshaken to that time; yet that learned judge was the first to shake its authority. But the dictum in Porter v. Bradley, which arraigns the distinction so fully established by the whole current of prior decisions for upwards of sixty years in the English courts of law and equity, has never been followed or recognised as law; and Lord Eldon, in Crooke v. De Vandes, 9 Vesey, p. 197., when that dictum was cited arid relied upon, took occasion to observe, that it went, in his view of it, to shake settled rules to their very foundations, and that he would not add to its authority. Lord Eldon, in the view he takes of the case of Forth v. Chapman, illustrates and confirms the distinction it establishes, and gives it the sanction of his own authority. I have bestowed the more attention upon the review of these cases because the principle which pervades them, and which supports the distinction between the legal sense of the words “dying without lawful issue,” when they refer to real estate, and the signification of them when applied to personal bequests, has a strong bearing upon the construction of the words used in the will now under consideration.
The same principle will justify a similar distinction in the exposition of the words “in the case of the death of both” used in this will, and authorise us to take them as to different estates in different senses. And if it shall be shown, that the words may be fitly referred to the death of the testator in cases of bequests of personal property, and can be more properly referable to some other event, in cases of devise of real estate, we shall be at liberty to hold them to refer in this case to such other event, and not to the death of the testator. Now, the great. *16 and leading object of the rule which restricts the contingency of the death of the legatee to the lifetime of the testator in cases of personal bequests, where the time is left indefinite by the will, is the preservation of the gift for the use of the legatee to whom it is bequeathed. The practical effect of the limitation over on the death of the legatee, if unrestricted, would be to reduce his interest to a life estate, and limit him to the use or interest of the property for his own life only, and to vest the principal in the legatee in remainder; and the only rule of construction by which that consequence can be avoided, and operation be at the same time given to the limitation, is to restrain the contingency upon which it is to arise to the death of the testator. On that construction the testator is understood to intend the bequest for the sole benefit of the first legatee, and the ulterior limitation to the second legatee, as a substitute for the first legatee in case he should be prevented by his death in the testator’s lifetime from taking it himself. And the legal effect of the rule will be to render absolute the right of the first legatee to the bequest, if he survives the testator, and to leave to the limitation over simply the operation of preventing the lapse of the legacy by the death of the legatee in the lifetime of the testator. This rule of construction is evidently the child of necessity. It is peculiarly adapted to bequests of personal property, and as yet has been exclusively applied to interests of that nature. But to bring this case within the rule, supposing it to be in any case applicable to devises of real estate, it must be assumed that there are no features on the face of this will, nor any ingredient in the case to indicate the intention of the testator; for the leading cases on the subject all admit that the rule is to apply to such cases alone ; and in Cambridge v. Rous, (8 Ves. 21.) where the rule was most distinctly laid down, the Master of the Rolls confines it to cases, where the words occur by themselves, and there is nothing to explain them. And in all the subsequent cases where the rule is recognized, it is conceded as a qualification of it, that the intention of the testator, if it can be collected from the whole context of the bill, shall controul it, and the words shall be construed to import the contingency which the testator appears to *17 have contemplated at the time. It is in cases only where no other intention can be discovered, that the rule which restricts the contingency to the lifetime of the testator, is applied. Is this such a case 11n this case the express devises to the wife for her life and to the daughters indicate a general intent to make them the objects of the testator’s bounty; and the limitations which follow show a particular intent to provide for the ulterior disposition of the estate in the event of the failure of those primary devises. The inferences to be drawn from these circumstances, and especially from the cross remainders between the daughters, and the condition annexed to the devise of the fee to the wife, give a character of its own to this will, and indicate an intention which appears to me to exclude the application of the rule contended for, even if it would be otherwise applicable. But without dwelling longer on the point, it appears to me decisive against the application of that rule to the case, that the effect of it would be to carry the whole estate, in the event of the death of the daughters in the testator’s lifetime leaving issue, to the widow, to the exclusion of all the grand-children: and that, in the event of either of the daughters surviving the testator, and the subsequent death of such as might survive him without issue, the estate, if undisposed of by them, instead of devolving upon the widow, the declared object of the testator’s preference, would descend to the brother, whom he has shown a most unequivocal intention to exclude.
But would the probable intention of the testator be better consulted by extending the contingency to the death of the wife? That a limitation in fee to the wife, in the event of the death of both the children in her lifetime, would be good by way of executory devise, cannot be denied; and it is obvious, that the ulterior devise to her would be more beneficial to her, under that construction, than it would be if the limitation was restrained to the life of the testator. But this construction, while it produced these effects, would be more disadvantageous to the daughters, as it would prolong the period during which their estates would be locked up from alienation, and their issue continue subject to be disinherited by their deaths. That exposition of the will, *18 therefore, though more favourable to the wife, is exposed to such formidable objections as respects the daughters that it can have ]3Ut feeble claims to a preference over the construction which restrains the contingency to the death of the testator ; for if the prjncjpie -g t0 prevail that the limitation of the fee to the wife was upon the contingency of the death of the daughters in her lifetime, it would follow that if one of the daughters had married, and afterwards died in the lifetime of the mother and sister, leaving lawful issue, the surviving sister would have taken the estate under the limitation of the will, to the exclusion of the children of the deceased ; and if that surviving sister afterwards died in the lifetime of her mother also, leaving larvful issue, the mother would take the whole estate, to the exclusion of the children of both of the daughters; and in neither case would the testator’s daughters or their offspring ever derive any benefit from his estate, but the whole interest would vest in the widow for her life until the death of the longest liver of the two daughters, and upon that event, in fee.
Can it be believed, that the testator seriously intended thus to cripple the devise to his children, or that it was his will in any case to exclude the issue of that one of his daughters who should happen to die in the lifetime of the other, from the parent’s share of the estate, in favor of his surviving daughter, or to disinherit the children of both his daughters for the benefit of his widow 1 He has intimated no such intention in his will; on the contrary, he has vested in his wife an estate for her life, and expressly devised the remainder to his two daughters in fee-simple. These were the two prominent and primary dispositions of the estate on the mind of the testator at the time he framed his will. The limitations over, which follow them, were added to provide for contingencies which the testator anticipated as possible to happen; in which the leading devises could not take effect according to his declared intention. They carry with them internal evidence, that they were not regarded, or designed as principal devises of the estate which were expected to vest in possession, but as contingent devises over, that might, in certain events, take place. To construe the devise to the daughters, a contingent estate to take effect in the contingency of outliving the mother, hut to fail *19 in the event of their death in her lifetime, would be, to transpose v z *■ the order of the dispositions made by the testator, and to convert the subordinate and contingent limitation over to the wife into the principal and primary devise. And the legal effect of it would be to vest the remainder in fee in the wife immediately on the death of the testator, subject to be displaced by the contingent fee to the daughters, in case either of them should survive the wife, and such was urged on the argument as the true construction 'of the will. It was contended,' that the devise of the estate was to the wife for her life, with remainder to her in fee, unless the children, or one of them, should survive her; and in that event, upon her death, to the children, or the survivor of them, in fee. But is that construction in conformity with either the letter or the spirit of the devise? In terms, the devise is to the wife for life, and after her death, to the children in fee; and the sense and spirit of that devise assuredly must be to give the estate to the wife for her life only, with a vested remainder in fee to the children; and in the event contemplated by the testator as possible to happen, but in that event only, to limit or devise over to the wife the inheritance primarily intended for the children.
From this view of the subject, it is obvious, that whether the contingency on which the contingent limitation of the fee to the wife is .to take effect, be restrained to the lifetime of the testator, or extended to the time of the death of his widow, the intention of the testator must, in certain events, be disappointed, and his bounty turned from the channels in which it was destined by him to flow, to a direction he meant it should never take. No construction involving such consequences can be satisfactory; and it remains to inquire whether the language of the testator, and the rules of law will not admit of an interpretation more conformable to his probable intention.
The contingency is loosely expressed, and its meaning obscure; but looking at the whole context of the will, and considering it in connection with the state of the testator’s family at the time, as disclosed in the case, the probable intention of it was to give the estate, after the death of the widow, to the children and their issue; and to provide for the event of the death of one of *20 the children, without issue in the lifetime of the other, by the limitation of cross remainders between them; and further to provide for the case of the death of both the children without issue by a limitation of the estate to the widow, in exclusion of the brother and collateral heir of the testator. On that scheme every part of the will would have a substantial and efficient operation, and an effectual disposition be made of the whole estate, without materially infringing the testator’s intention in any conceivable turn of events. Thus the widow would hold for her life, and upon her death the daughters, if living, would come into possession of the estate; or if either of them should die before the widow, her issue would represent her, and take her share of the estate. And in default of issue, her share would devolve upon the surviving sister; and in the event of the death of both the daughters without issue, the estate would vest in the widow, and her life estate be merged in the inheritance. To the objection that an ulterior limitation of the fee to the wife, after a devise to the daughters in fee is forbidden by the policy of the law, we answer that the difficulty is obviated by construing the devises of the will to create estates tail in the daughters with cross remainders between them, and an ulterior limitation upon the termination of these estates, to the wife and her heirs in fee. But, whether, the limitation to the surviving daughter and to the wife are by the rules of law to be construed as remainders, or as executory devises, the intention we impute to the testator, upon this scheme for the settlement of his estate would be the same, and would he carried into effect to the extent that the principles of law would permit. Nor would that system be materially deranged by the death of the daughters leaving issue in the lifetime of the testator, for the daughters not dying without issue, the devise over to the wife could not take effect, and the estate admitting it to lapse, would descend to the lawful issue of the daughters, as the heirs at law of the testator. It is true, however, that if one of the daughters happened to die in the lifetime of the testator, leaving issue, and the other daughter to survive him, the lapse of the devise to the daughter so dying, admitting it to lapse, might produce a partial disappointment of the testator’s in *21 tention, by divesting a portion of the deceased daughter’s share of the estate from her own offspring to her surviving sister, when the testator upon the system we ascribe to him must have intended the lawful issue of each daughter, in case of such daughter’s death, leaving issue, to be the sole inheritors of the parent’s share. But the construction to which we incline, though in that turn of events it might partially fail, would approach much nearer to the accomplishment of the views of the testator, as we understand them, than any other exposition of the will to which our attention has been called, and it is therefore to be preferred. But to effect those objects, the will must beso construed as to restrict the limitation to the death of the daughters without lawful issue; and if that can be taken as the contingency upon which the limitations are to arise, all difficulty will disappear.
Are we at liberty, then, to adopt that construction of the will? The objection is, that we are obliged to supply the words “without issue” by intendment; and it is urged that by such a construction we should express for the testator an intention which he may have had, but which he has not himself expressed; and which, it may be contended, would transcend the power of the court. I fully appreciate the wisdom and binding authority of the maxim, that it is the province of courts to expound the will Avhich the testator makes, and not to make one for him. But Avhenever a testator expresses himself so obscurely, or employs language of such doubtful import, as to leave his meaning uncertain, courts are driven to the necessity of deciding upon his probable intention, and of expounding his will according to the best lights in their poAver. The question in such cases is always a question of intent, and it not unfrequently happens, that to give effect to the words which the testator employs in the sense that he is supposed to have used them, other Avords must be understood to describe and express the disposition he is held to make of the estate. Thus in the familiar instance of the devise to the heirs at law after the death of the Avife, a gift to the wife for her life arises by implication, and is engrafted upon the estate which the testator has created. So in a devise to A, and Ms heir, Avith a remainder over to a cob *22 lateral heir of A., the word heirs will be construed to mean “ heirs of the body” without the addition of these words in the will, and the estate of the first devisee will be reduced from a fee-simple to an estate tail. And in the case now under consideration, all agree in this, thatto reconcile the ulterior limitation of the inheritance to the wife with the previous devise of the fee to the daughters, the event of the death of the daughters on which the limitation over is to arise, must be taken with some qualification, and understood in a restricted sense. And if the objection to qualify the event of death, by construing it to mean a dying without issue is to prevail, because other words than those that are used must be understood, how can it be admissible to restrain the event to the lifetime of either the testator or his widow, when no words implying any such restriction are to be found in the will 1 The true rule is, that the probable intention of the testator must be collected from the whole context of the will, according to the judgment of the court which is to expound it; and then the necessary words to express that intention must be understood and supplied by intendment.
Now, in the will before us, the two immediate and principal devises of the estate to the wife for life, and of the remainder to the daughters in fee, are clear and simple, and perfectly intelligible; and of themselves, if they stood alone, would dispose of the whole interest of the testator in the estate: and the limitations to the surviving daughter, and to the wife, when the events on which they are to arise, are ascertained and settled, become equally intelligible. The whole doubt rests upon the contingency upon which those limitations over were intended by the testator to take effect. In resolving this doubt, the court are to preserve the interests created by the express devises of the testator to his wife and children, as far as their preservation is allowed by the rales of law, and may be effected without destroying the ulterior limitations. The legal import of the devise to the daughters is a gift to them and their heirs. By the terms of the first limitation over, as expressed in the will, if one died, the estate was to go to the survivor. To reconcile this limitation with the devise, the event of the death of the daughter must be understood with some qualification; *23 since the limitation, if upon the event of death simply, which was sure to happen, would turn the previous estate in fee into an estate for life. Why, then, may it not be assumed as the probable intention of the testator, to limit over the estate upon the death of the daughter without lawful issue % The terms must be'construed, either as a dying without issue, or as a dying within some limited tune; and the qualification of the word “ dying,” by the words “without issue” is not greater than the restriction of the term by the words “in my lifetime,” or the words “inthe lifetime of my wife”. In each qualification the death of the daughters is preserved as the event on which the limitation is to take effect; the only difference is, that on the one construction, the death is to happen within a limited period, and on the other, it is to take place under the special circumstance of a failure of issue; on principle, that construction is to be preferred which best comports with the previous devise. We have already seen, that by simply restricting the limitation to the death of the daughters in the lifetime of either the widow or the testator, the issue of the daughter, in the" event of the death of the parent before the testator, or the widow, as the case might be, would be deprived of the inheritance; and the whole estate would vest, either in the surviving sister or in the widow of the testator, according to the state of things at the time of the death of the parent. But by restraining the limitation to the death of the devisee without issue, the interests of the daughters and their issue to the extent that the rules of law will permit, are protected and preserved, and the devise to the daughters at the utmost, would be no otherwise impaired than by reducing it from a fee-simple to a fee-tail.
This comparative view of the legal effect of the two rules of construction appears to me decisive in favor of that which restrains the death of the daughters to a dying without issue, in preference to that which restricts the death to the lifetime of either the testator or the widow. But the construction which adopts the restriction of time to qualify the limitation is beset with other difficulties, which are obviated by qualifying the event of death by the failure of issue. Thus the contingency of the death of one of the daughters in the lifetime of the other, is left at large *24 by the will, and its natural limit would be the joint lives of the daughters; but by restricting the contingency of the death of those devisees to the lifetime of the widow, to whom the fee is in that event limited over, the survivorship between the daughters must have the same limitation; and the consequence would be, that on the death of the wife, the whole limitation would cease, and the estate of each daughter become absolute, notwithstanding the subsequent death of one without issue, and the survivorship of the other. Again, the limitation over, of the inheritance to the wife was obviously meant to vest in her the absolute fee, and to exclude the lessor of the plaintiff from the inheritance. But if the event on which the limitation of the fee to her is to take effect should be construed to be the death of both the daughters in her lifetime, it is obvious that her death in the lifetime of either must defeat the limitation to her, and let in the brother as the heir to the daughters in case of their death, seised of the inheritance, intestate and without issue. Besides, upon that construction of the will, the limitations over, would be executory devises, and it may admit of a serious question, whether a limitation to the widow after an estate in fee to the daughters, with cross remainders by way of executory devises would not be void as too remote, un1 ess the limitation was to her for life. But it could not be a limitation to her for life, for she had an estate for life by express devise, and a further devise for life on a new contingency would not enlarge her interest. The intention must have been to give her the inheritance, upon the happening of the event which was to determine the estates of the daughters ; and the condition annexed to the estate, which was in that event to accrue to her, that she should pay one shilling to the brother of the testator, if demanded, conclusively shows that she was to take the fee. These considerations lead irresistably to the conclusion, that the testator could not have contemplated the death of his daughters at any particular period of time, as the contingency upon which the estate devised to them was to go to his widow, but that he must have had in view the death of both without issue; in which case, unless *25 some provision had been made by his will to prevent it, the estate would descend to his brother; and the condition of the payment of the trifling legacy to the brother by the wife, in the event of her accession to the inheritance, corroborates that conelusion; for the only reason that can be assigned for that condition is the vulgar notion that a legacy to the heir at law is essential to the validity of a devise which cuts him off from the inheritance. But the testator must have known that he would, not be the heir at law, unless the daughters both died without issue; and consequently, the circumstance of his annexing that condition to the devise of the inheritance to his wife, in case of the death of his daughters shows, that the death of the daughters without issue, and the consequent accession of the brother as heir at law, was the event in his contemplation at the time, and intended by him as the contingency upon which the limitation to the wife was to take effect. If, then, this intention is thus clearly discoverable from the will itself, taken in connection with the state of the family of the testator as disclosed in the case, and if that intention is in itself so just and reasonable, it would be greatly to be lamented, if the will could not be so construed as to give it that effect, especially as any other construction is seen to produce results which the testator could not have intended. My own reflections have satisfied me, that we shall contravene no principle of law, and violate no rule of construction by the exposition of the will to which I incline, and the authorities which bear upon the point appear to me to authorise that construction.
In the case of M‘Clintick and others v. Manus [4 Munford, 328.] where the limitation was upon the contingency that the devisee should die, the Supreme Court of Appeals of the State of Virginia determined that the event contemplated was a dying without issue, which created an estate tail in the devisee. In that case the testator, among other bequests and devises, devised to each of his sons a tract of land, which were held to be devises in fee, and to each of bis daughters a pecuniary legacy, and the will contained a limitation to the following effect: If it should please God, that *26 any of my sons should die, their part or parts to he equally divided among the rest of their brothers ; and likewise with my daughters ^ cage any should die.” One of the sons died under age, intestate and without issue, and the court was of opinion that the event contemplated for the limitation to take effect, was not a dying merely, because that is a certain, and not a contingent event; nor was it a dying without heirs, for that could never happen so long as any of the devisees over, or their issue, were living. That the event contemplated, therefore, was a dying without issue, which created an estate tail in the first devisee, and being enlarged by statute into a fee, enured to the female appellants as a part of the heirs of the deceased son. It was contended in that case, as in this, that the limitation to the rest of the brothers operated by way of executory devise, on the principle of being a contingency to happen in the compass of the lives of the brothers. But the court held, that the limitation over to the brothers was not good by way of executory devise on that principle, because-the last clause of the will enlarged the devise to the sons into estates in fee; and the limitation over, consequently, was to the brothers and their heirs.
The principle of the case of M'Clintick v. Manus, is sanctioned by the decision in the. case of Spalding v. Spalding, Cro. Ch. 185. In that case the testator devised the land in question to John, his eldest son, and the heirs of his body after the death of Alice, the devisee’s wife; and if John died, living Alice, that William, another son of the devisee, should be his heir. John died leaving issue a son, in the lifetime of Alice, the widow; then Alice died, and William entered upon the son of John; and the question was whether his entry was congeable 1 It was urged by William, the ulterior devisee, that as John, the first devisee, had died in the lifetime of Alice, the contingency had happened upon which the limitation to him was to take effect. But it was adjudged by all the court, upon the whole context of the will, that it was to be construed according to the intent of the party, and that the construction should be, that if John die without issue, living Alice, then William, the jmunger son should have the estate; and that the testator having limited it first to John and tire heirs of his body, it should not be construed that if John died, living *27 Alice, that William should be his heir, John having issue, and thereby to disinherit the heirs of John’s body. It is true, that reference was had to the devises in the same will to the other children, and a general devise over of the whole estate, in case of the death of all the children without lawful issue, as manifesting the intention of the testator. But the material words without issue,” which determined the character of those limitations, did not appear in the limitation over of the estate devised to John in the contingency of his death in the lifetime of Alice. And the court supplied those words, as necessary to express the probable intention of the testator because the issue of the devisee must otherwise have been disinherited, which could not be the intention of a testator, who first devised the estate to John and the heirs of his body. This rule of construction has been repeatedly recognised and confirmed. Thus, in the case of King v. Mellen, (Ventris, 225.) Chief Justice Hale, who pronounced an able opinion, which, though then overruled by his associates, ultimately prevailed, refers to Spalding’s case with approbation, and observes, that it was strongly urged in that case, that the estate of the first son should cease, for being said, if he died, living the wife, this was a correction of what went before. But it was ruled by all the court that it was an absolute estate tail in the son, as if the words had been, if he died without issue, living the wife, because the testator could not be thought to intend to prefer the younger brother to the issue of the eldest. This comment by so able a jurist sufficiently illustrates the principle of the decision, and sanctions its authority.
So in the case of Kentick v. Newman, where the sum of £200 was by articles before marriage agreed to be laid out in land to be settled on husband and wife for life, remainder to the heirs of their bodies, remainder to the husband in fee; but if no settlement made during the joint lives, then the £200 to be to the sole use of the wife, if living; but if she should die before her husband, then the £200 to go to her brother and sister. She died before her husband,leaving issue of the marriage, a daughter. The question was, whether the £200 should go to the wife’s brother and sister, or to her *28 daughter. According to the letter of the articles it would go to the brother and sister; but the court decreed it to the daughter, for that the intent of the articles was to provide for the wife and the issue of the marriage, and not for the brother and sister of the wife. It was observed, that it could not be intended that the wife ever thought of preferring her brother and sister over her own child; and though the words were, if the wife should die, living the husband, then the £200 to go to the wife’s brother and sister, yet they must be construed to mean, if the wife should die without issue. In that case reference was made to the case of Spalding v. Spalding, as a case in which the court, to effectuate the intention of the testator, had supplied the words “ without issue,” because it could not be intended that the testator would prefer the second son before the issue of the eldest.
These cases show that courts, in expounding devises of real estate, proceed upon the principle that when there is an express devise in fee, or in tail, the issue of the devisee shall not be disinherited by a limitation over, purporting in its terms to be upon the death generally of the devisee. But such limitation, to preserve the inheritance for the issue, shall be construed to be upon the contingency of the death of the first devisee without issue.
Why is not this court at liberty to apply that rule to the construction of this will? The facts clearly bring the case within the principle; and the reasons given for the rule in other cases apply in their full force to this. For this testator first devised the estate to his two daughters in fee-simple, after the death of his wife; and it is most improbable that he should intend by the devise over of the inheritance to the wife, upon the death of the daughters, to disinherit the issue of the daughters for whom the first devise of the fee would otherwise provide. And if in the case of Spalding v. Spalding, where the limitation over was to a younger brother, upon the event of the death of the son to whom an estate tail had been expressly devised, in the lifetime of the widow, the court were at liberty to construe the contingency to be the death of the son without issue, because the issue of the *29 son would otherwise be disinherited contrary to the intention of the testator. It cannot surely be going too far in this case, where a the limitation over of the inheritance is to the testator’s wife, to whom an estate for life in the land had already been devised, upon the event of the death of the testator’s children, to whom an estate in fee had been previously given, to construe the contingency contemplated by the testator, to be the death of the daughters without issue; since, upon either of the other constructions sought to be put upon the will, the issue of both the daughters, in the event of their death in the lifetime, in the one case, of the testator, and in the other, of the widow, must be disinherited. But it is contended, that if the limitations are upon the contingency of the death of the daughters without issue, the consequence will be, that the first limitation between the daughters, being a devise of the property in case of the death of one of them without issue, to the other, must upon the authority of the case of Jackson v. Anderson, [16 Johns. Rep. 383.] be construed to depend upon the contingency of the death of her who should first die without lawful issue, living at the time of her death, and that the devise over upon that event was a limitation over as an executory devise to the survivor, and that the ulterior devise to the wife would be too remote to be valid.
The case of Jackson v. Anderson arose upon the will of Medcef Eden, by which will the testator devised certain real estate to his son Joseph, his heirs and assigns, and other real estate to his son Medcef, his heirs and assigns, and declared that it was his will, that if either of his said sons should depart this life without lawful issue, his share or part should go to the survivor, and in case of both their deaths without lawful issue, then he gave all the property to his brother John Eden, and his sister Hannah Johnson and their heirs. Both sons survived the testator, and Joseph afterwards died without issue, in the lifetime of Medcef, and the suit was brought by Medcef for premises devised to Joseph, against the purchaser under a judgment against Joseph. The question was, whether the devises to the sons, with the limitations over, created estates tail in the devisees, with cross remainders, or whether Joseph took an estate in fee, with a limita *30 tion over, by way of executory devise to Medcef. And it was decided, that the devise to Joseph, with the limitation over to Medcef, did not create an estate tail in Joseph, but that the devise over, upon the event of his dying without issue, was a limitation by way of executory devise to Medcef, the survivor. In the decision of that case, great stress was laid upon the express , limitation to the survivor of the two sons of the testator.
And the court in the subsequent case of Lion v. Burtis, which arose upon the other branch of the limitation in the same will, in substance declared the general rule to be that a limitation of real estate, on a dying without lawful issue, where there are no other words restrictive of the operation of those terms, is to be construed an indefinite failure of issue, and creates an estate tail in the first taker. The decision in Jackson v. Anderson is an exception to the rule, and rests in a great degree upon the force of the term survivor, which was held to denote an intention of the testator to limit the failure of issue to a life in being.
The case of Lion v. Burtis, [20 Johns. R. 483.] arose upon the death of Medcef Eden, the surviving son of the testator Avithout issue, and involved the consideration of the nature, and extent of the estate of Medcef at the time of his death; and the legal operation of the limitation over to the testator’s brother and sister, which then for the first time came under judicial review. And it was adjudged that Medcef, upon the death of his brother Joseph, became seised of the estate in fee tail, with a remainder in fee-simple, to the brother and sister of the testator, and the judgment of the Supreme Court was affirmed, in error. One ground of the decision was, that the executory devise Avhicli had been adjudged by the prior decision to have subsisted between Joseph and Medcef, ceased upon the death of Joseph, because the estate then vested in possession in Medcef. But stress was also laid upon the difference in the phraseology of the limitations to the survivor of the sons, and to the brother and sister of the testator. Thus, it was observed by the Chief Justice, in giving the opinion of the Supreme Court, that the devise over to the brother and sister omitted the word survivor, which was considered very significant and important in showing the intent *31 of the testator, when he gave the estate to his surviving son, in case the other died without lawful issue. And the Chancellor, in his opinion, in the court for the correction of er-tors, observes, that the use of the word survivor in the first limitation, and the absence of that term, or any words of similar import in the last, formed a strong distinction between the two devises, and that the court in deciding that the estate of Joseph was not a fee tail, by no means determined that the estate of his surviving brother was not such an estate.
These cases upon the will of Eden, therefore, taken together, appear to me to oppose no obstacle to our construction of the will under consideration. In this will the devise to the two daughters is in fee; and the ulterior limitation to the mother is upon the death of both of them, (as we construe the contingency) without lawful issue; upon that limitation the question in this case arises. It is clear that the estates of both the daughters must terminate before the ulterior devise to the mother can take effect, and it is equally clear, that to give opinion and validity to the devise over to her, the preceding estate of the daughters must be held to be in fee-tail. And unless the terms of the first limitation between the daughters precludes it, that construction ought to prevail, as it so fully effectuates the manifest intention of the testator, in favor of the declared objects of his bounty. Now the devise over upon the death of one of the daughters to the other, is not in express terms, nor, as I conceive, by necessary intendment, to the surviving daughter, The words are, “ if one of them should die, the property to descend on the otherand these words, understanding the testator to refer to a dying without lawful issue, do hot necessarily restrict the contingency to any particular period of time, but more properly import a failure of issue, whenever it may happen, as the contingency upon which the estate is to go over. It is more analogous to the case of Holmes v. Meynel, [T. Ray, 452.] than to that of Jackson v. Anderson. For the case of Holmes v. Meynel, the devise was to the daughters of the testator and their heirs, equally to be divided between them; and in case they should happen to die without issue, a devise over to F. And the court held that the daughters took several estates *32 tail, and when the issue of either should fail, the other would take by way of cross remainder in tail. So in the case now under consideration, the devise, as we understand it, is to the two daughters in fee, and if one of them should die without lawful issue, the state to descend, or accrue to the other; by which devise, the daughters, upon the principle of the last cited case, took estates tail, with cross remainders in tail, upon the failure of issue; and upon that construction, the ulterior limitation to the mother was in fee, upon the termination of the estates tail, of the daughters, and all the provisions of the will would have their effect, and be satisfied.
But it was said, that if the limitation in question created estates tail in the daughters, the statute turned them into estates in fee-simple. If those estates had fallen into possession, and the daughters, or either of them, had become seised in fee tail, such might have been the consequence. But the provision of the statute is, that when any person would, if that statute and the act to which it refers, had not been passed, have become seised, in fee tail of land, &c. by virtue of a devise, &c. such person, instead of becoming seised thereof, in fee tail, shall be deemed and adjudged to become seised thereof in fee-simple, absolute. In this case there was no previous estate for life, in the widow, and the devise of the estate tail to the daughters was in remainder. They could not become seised of the land in fee tail, until the death of the widow, and the estate tail could not, during the existence of her life estate, and before the daughters became seised of the land, be converted by the statute into a fee simple.
I have not entered into an examination of the cases cited by the defendant to show that the contingency, upon which the limitation of the fee to the wife was to take effect, is the death of the daughters in her lifetime. But it may be . proper to observe that in those cases, the limitation to the ulterior devisee was upon a contingency expressly declared by the testator, or resulting by neceessary intendment from the will; and no room was left to the court for construction. The rule that no implication shall defeat an express limitation applied, and the court was bound to *33 ' give effect to the will of the testator, when clearly expresed, however hardly it might bear upon the natural objects of his bounty. But when, as in this case, the intention is to be colIected from uncertain, obscure, or imperfect expressions, the court look to the probable intention of a testator in such circumstances; and never admit a construction by implication which operates to disinherit an heir, or to exclude the children of the testator or their issue, unless from necessity.
Judgment for the defendant.
[R. Lockwood, atty. for plff. J. Anthon, atty. for deft.]