#### IN THE

# SUPREME COURT

#### OF THE

## STATE OF NEW-YORK,

#### IN JANUARY TERM, 1846.

---

## VANDERHEYDEN and WENDELL *vs.* CRANDALL.

Limitations in trust to preserve contingent remainders (when such trusts were legal) were not *executed* by the statute of uses.

Where an estate was intended to be given to one with contingent remainders to his issue, the method was to give him a legal estate for his life, with remainder to trustees to preserve the contingent remainders, *or* to convey directly to trustees in trust for the party who was to have the life estate, during his life, and also to preserve the contingent remainders and upon that estate to limit the future remainders : either mode was legal.

Where the method last mentioned was pursued, *held* that the person first beneficially entitled took an equitable estate for his life, and that those in remainder took by *purchase* and not by *descent.*

The statutes passed in 1782 and 1786 for abolishing entails operated as well upon vested remainders in tail as upon estates tail which had taken effect in possession.

A remainder in fee expectant upon a freehold estate acquired by purchase, will pass by descent to the heirs of the person seized in remainder.

Accordingly, where a testator whose will took effect before the revolution devised lands to trustees during the life of his grandson M., to preserve contingent remainders, but in trust to permit M. to receive the rents and profits during his life, and from and after his decease devised the same to the first son of M. and the heirs male of his body, and in default thereof to his second, third and every other son successively, and to the heirs male of their bodies respectively, with further limita-

VOL. II.*          2

Vanderheyden *v.* Crandall.

tions depending upon the failure of male issue of the sons of M.; and M., who had no sons at the death of the testator afterwards had several, the eldest of whom, born in 1783, died without issue in the lifetime of his father in 1809; *held* that M. was not tenant in tail, but took only an equitable life estate, and that his eldest son became seized on his birth of a vested remainder in tail expectant upon the death of his father, which by the act of 1782 was immediately converted into a remainder in fee.

*Held also,* that upon the death of the eldest son his estate descended to M. his father, as his heir at law.

M. having mortgaged the premises in 1792 with a covenant of seizin, and the mortgage having been foreclosed; *held* that the estate which thus came to him by descent enured by *estoppel* to the title derived under the mortgage.

EJECTMENT for lands in the city of Troy, tried at the Rensselaer circuit in December, 1843, before WILLARD, C. Judge. In the first count Abraham Vanderheyden and David S. Wendell were named as plaintiffs, jointly; and each of them was named as plaintiff, separately, in the two other counts.

The premises in question are a part of the real estate of which Mathias Vanderheyden the elder was seized at the time of the execution of his last will and testament, and at the time of his death, which took place prior to 1776.

The plaintiffs gave in evidence the last will of Mathias Vanderheyden, which was duly executed to pass real estate, on the first day of March, 1770. After several provisions not necessary to be stated was the following devise:

"*Item.* I devise my dwelling house, farm and plantation, and all other my real estate whatsoever and wheresoever, to Jacob I. Vanderheyden and Nanning Visher, silver-smith, and their heirs for and during the life of my grandson Mathias, the eldest son of my son Dirk, to the intent to support the contingent remainders in this my will after limited, so that the same may not be destroyed, but in trust, nevertheless, to permit and suffer him to receive the rents and profits thereof to and for his own use during his natural life, *and from and after his decease* I devise the same to the first son of the body of the said Mathias, lawfully issuing, born or unborn, and to the heirs male of the body of such first son, lawfully issuing. And for default of such issue, then likewise to the second, third and every other son of the said Mathias, successively and in remainder, the one after

the other, as they shall be in seniority and priority of birth, and the several and respective heirs male of the body or bodies of every such first, second and third and other son or sons—the eldest of such sons and the heirs male of his body being always preferred and to take before any of the younger sons and the heirs male of his body."—In case of the failure of such issue (an event which has not happened) the estate was successively devised to the testator's grandsons John, Dirk and Abraham, the other sons of his son Dirk in tail male, and upon failure of male issue of all of them, then successively to the issue female of all the said grandsons, and in default of such issue, then to Jacob I. Vanderheyden in fee.

Mathias Vanderheyden, the testator's grandson, died on the 17th day of August, 1825, having had four sons, viz.: Dirk M., born August 26th, 1783, who died February 5th, 1809, without issue; Henry M., born May 25th, 1785, and died June 22d, 1820, without issue; Mathias jun., born November 25th, 1788, died November 23d, 1840, also without issue; and Jacob M., who was born June 11th, 1793, and is still living, and has issue male and female. Abraham Vanderheyden, one of the plaintiffs, is the testator's grandson and the fourth son of his son Dirk, and the same person in that respect mentioned in the will. He was born April 24th, 1766.

The plaintiffs gave in evidence a deed in fee of the premises in question with full covenants, executed by Mathias Vanderheyden jun., the third son of the testator's grandson Mathias, to the plaintiff Wendell, dated the 16th day of August, 1825. This Mathias, it will be seen, was at the time of his death the eldest surviving son of the testator's grandson Mathias. The defendant admitted himself to be in possession.

The defendant's counsel gave in evidence a mortgage of the premises in question executed by Mathias Vanderheyden, the grandson of the testator, to secure the payment of two hundred pounds with interest to the loan officers of the county of Rensselaer, dated August 1st, 1792, *which contained a covenant of seizin* and was regularly recorded; and a conveyance in fee executed by the said loan officers to Albert Pawling, on the 18th

day of September, 1799; and proved that ever since the execution of the last mentioned conveyance the premises had been in the actual possession of persons holding by title derived from that conveyance and claiming to be owners in fee.

The defendant moved for a nonsuit, insisting that by the will, Mathias Vanderheyden the grandson of the testator took an estate tail, which the statute abolishing entails converted into a fee: but that if this were not so, his eldest son became seized as tenant in tail, and that estate was turned into a fee by the statute, and upon his death the property descended to his father, and that in either case the title under the loan office mortgage was perfect. He also insisted that the deed to the plaintiff Wendell was void by reason of the adverse possession of the premises under the title acquired by means of the mortgage to the loan officers. The circuit judge declaring himself to be of opinion with the defendant upon these propositions, ordered the plaintiffs to be nonsuited, who duly excepted to the decision. The plaintiffs move to set aside the nonsuit and for a new trial on a bill of exceptions.

*S. Stevens,* for the plaintiffs. (1) Mathias Vanderheyden, the grandson of the testator, did not take an estate tail under the will, but only an equitable interest in the premises for his life. But if his estate was a legal one it was still but a life estate. Never having been tenant in tail, the estate was not changed into a fee in his favor by the statute abolishing entails. (*Whetstone* v. *Bury,* 2 *P. Wms.* 146; *Biscoe* v. *Perkins,* 1 *Ves. & Beame,* 489; *Moody* v. *Walters,* 16 *Ves.* 283, 294; 1 *Dick. Ch. Rep.* 183, 194; 3 *Coke's Inst.* note 249, §§ 1 *to* 6; 2 *Bl. Com.* 171, 2; *Bamfield* v. *Popham,* 1 *P. Wms.* 54; 1 *Cruise's Dig. tit.* 12, *ch.* 1, §§ 7 *to* 17; *Lewin. on Trusts,* 102, 356; *Stedfast* v. *Nicoll,* 3 *John. Cas.* 18; *Jackson* v. *Brown,* 13 *Wend.* 437; *Rogers* v. *Rogers,* 3 *id.* 503; *Lisle* v. *Gray, T. Raym,* 278; *Sir W. Jones' Rep.* 114; 1 *Prest. on Estates,* 284 *to* 286, 347, 349, 359, 360 *to* 372.)

(2) Neither Dirk M., the first son, or Henry M., the third son of Mathias, the testator's grandson, were ever seized as tenants

in tail under the will. Both having died in the lifetime of their father, and during the continuance of the particular estate for life devised to or in trust for him, the estate tail did not vest in interest or possession. (1 *Ves. sen.* 290; 2 *Vern. R.* 528; 1 *Maule & Sel.* 124; 3 *id.* 33; 2 *Moore,* 519; 6 *Price,* 41; 1 *Pow. on Dev.* 304 *to* 310; *Preston on Estates,* 64, 66, 67; 1 *R. L.* (1813) 52; *id.* 71, §§ 3, 4; 2 *Bl. Com.* 5, 105; *Jackson* v. *Hendricks,* 3 *John. Cas.* 214; *Jackson* v. *Johnson,* 5 *Cowen,* 74 *to* 98; *Jackson* v. *Strang,* 1 *Hall's Rep.* 1, 32; *Co. Litt.* § 446, 265, *b.*; *Jackson* v. *Wright,* 14 *John.* 193; *Jackson* v. *Hubble,* 1 *Cowen,* 613; *Nowell* v. *Bagley,* 3 *Simons,* 107.)

(3) The estate tail first vested in interest, at the termination of the particular estate by the death of Mathias the testator's grandson, in August, 1825. It vested at the same time in possession and was then and not before converted into a fee by the statute abolishing entails. It vested either in Mathias, jr. who on the death of his father, the tenant for life, answered the description of his first or eldest son, or in the plaintiff Abraham Vanderheyden, the next surviving grandson of the testator.

(4) By the conveyance from Mathias, jr. to the plaintiff Wendell and by force of the covenants contained in that deed, the latter on the death of Mathias the grandson became seized of the same estate which said Mathias, jr. would have been entitled to, if he had not executed that conveyance. Although the grantor had no estate when he executed the conveyance, the title which subsequently devolved upon him enured by force of the *estoppel* to his prior grantee. (*Co. Litt.* § 446, 265, *b; Jackson* v. *Wright,* 14 *John.* 193; *Jackson* v. *Hubble,* 1 *Cowen,* 613; *Nowell* v. *Bagley,* 3 *Simons,* 107; *Jackson* v. *Schoonmaker,* 4 *John.* 390; *Jackson* v. *Sellick,* 8 *id.* 262; *Jackson* v. *Johnson,* 5 *Cowen,* 74, 97; *Luce* v. *Carley,* 24 *Wend.* 451; *Jackson* v. *Creal,* 13 *John.* 116; *Clapp* v. *Bromagham,* 9 *Cowen,* 530.)

(5) The possession taken under the deed from the loan officers was not adverse to the title of Mathias, jr. during the lifetime of Mathias the tenant for life. (*Jackson* v. *Schoonmaker,* 4 *John.* 390; *Jackson* v. *Sellick,* 8 *id.* 262; *Jackson* v. *Johnson,* 5 *Cowen,* 74, 97; *Jackson* v. *McClaskey,* 2 *Wend.* 541; *Luce* v.

Vanderheyden *v.* Crandall.

*Carley,* 24 *Wend.* 451; *Jackson* v. *Creal,* 13 *John.* 116; 6 *Conn. R.* 631; *Clapp* v. *Bromagham,* 9 *Cowen,* 530.)

*D. Buel, Jr. & George Wood,* for the defendant. (1) Mathias the grandson of the testator and first devisee took an estate tail by the will which the statutes abolishing entails converted into a fee. (*Parks* v. *Parks,* 9 *Paige,* 107, 120, 121; 1 *R. L.* (1813,) *p.* 72; 2 *Saund. R.* 11, *n.* 17; 2 *Bl. Com.* 336, *Christian's note* 12; 1 *Preston on Estates,* 264, 265, 387—8, *and seq.*; 1 *Bro. C. C.* 75, *Eden's note* (*c*); 1 *Fearne Cont. Rem.* 28, 29, 33, 165, 167, 173, 178, 194; *id.* 161, 162, 203, *and Butler's note*; *Broughton* v. *Langley,* 2 *Ld. Raym.* 873; *Papillon* v. *Voice,* 2 *P. Wms.* 471; *Colson* v. *Colson,* 2 *Atk.* 247; *Thong* v. *Bedford,* 1 *Bro. C. C.* 313; *Roe* v. *Bedford,* 4 *M. & Sel.* 362; *Shelley's case,* 1 *Rep.* 104; 4 *Cruise's Dig.* "*Deed*" 32, *ch.* 25, § 28; *Pybus* v. *Mitford,* 1 *Ventr.* 372; *Hayes on Disp. of Real Estate,* 9, 11, 12; *Co. Litt.* 376, (*b*) *note,* 329; *Denn* v. *Puckey,* 5 *T. R.* 299; *Doe* v. *Applin,* 4 *id.* 82; *Doe* v. *Cooper,* 1 *East,* 229; *Knightland* v. *Rapelye,* 3d *ed. Ch. Rep.* 1; 4 *Kent's Com.* 231; *Robinson* v. *Robinson,* 1 *Burr.* 38, 50; 3 *Bro. Parl. Cas.* 180, *S. C.*; 5 *id.* 278; 2 *Ves. sen.* 225; 3 *Atk.* 736; *Wight* v. *Leigh,* 15 *Ves.* 564; *Atty. Gen.* v. *Sutton,* 1 *P. Wms.* 754; *Wharton* v. *Graham,* 2 *W. Bl.* 1083; *Sonday's case,* 9 *Rep.* 127; *Wyld* v. *Lewis,* 1 *Atk.* 432; *Mellish* v. *Mellish,* 2 *Barn. & Cress.* 520; *Langley* v. *Baldwin, Eq. Cas. Ab.* 185; *Goodright* v. *Wright,* 1 *P. Wms.* 397; *Humberston* v. *Humberston,* 1 *id.* 332; *Nichol* v *Nichol,* 2 *W. Bl.* 1159; *Hopkins* v. *Hopkins, Cas. Temp. Talbot,* 41; *Robinson* v. *Hardcastle,* 2 *T. R.* 241, 380, 781; 2 *Bro. C. C.* 22, 344; *Pitt* v. *Jackson, id.* 51; *Roe* v. *Grew* 2 *Will.* 322; *King* v. *Burchall, Ambler,* 379; 4 *T. R.* 296, *note.* (*d*); 2 *Fon. Eq.* 58, *note; Doe* v. *Goldsmith,* 7 *Taun.* 209; *Doe* v. *Smith,* 7 *T. R.* 531; *Doe* v. *Halley,* 8 *id.* 5; *Pierson* v. *Vickers,* 5 *East,* 548; *Jesson* v. *Wright,* 2 *Bligh,* 1; *Jackson* v. *Brown,* 13 *Wend.* 437; *Jones* v. *Morgan,* 1 *Bro. C. C.* 219.)

(2) If Mathias the testator's grandson did not take an estate

tail, his first son Dirk M., as soon as he was born took a vested remainder in tail, which was converted into a fee by the statute abolishing entails; and when he died intestate, his father who survived him would have taken the estate by descent but for the mortgage which he had given to the loan officers. But as that mortgage contained a covenant of *seizin,* the estate which subsequently came to the mortgagor enured to the benefit of the party holding under the title derived from that mortgage. (*Luddington* v. *Kime,* 1 *Ld. Raym.* 208; *Lewis* v. *Waters,* 6 *East,* 336; *Hayes Dis. of Real Estate, Precedent No.* 1, *p.* 117; 2 *Bl. Com.* 334; 1 *Fearne,* 206; 4 *Kent's Com.* 202, 386, 387, 533; 1 *R. S.* 723, § 13; *Lawrence* v. *Bayard,* 7 *Paige,* 75; 3 *R. S. Appendix,* 47 to 49, 51, 56, 60; *Jackson* v. *Brown,* 13 *Wend.* 437; *Lion* v. *Burtiss,* 20 *John.* 487–8; *Jackson* v. *Van Zandt,* 12 *id.* 169; *Watkins on Descents,* 3, 4, 6, 20, 21 *to* 24, 27, 118, 120; 2 *Bl. Com.* 241; *Leyman* v. *Abeel,* 16 *John.* 30; *Doe* v. *Hutton,* 3 *B. & P.* 648, 650; *Ratcliff's case,* 3 *Rep.* 42; *Co. Litt.* 14 *a, note* 76; 2 *Bl. Com.* 227, *note* (13); 1 *Fearne,* 256–8, *note* (*f*); *id.* 561; 2 *Preston's Ab. tit.* 282; *Jackson* v. *Hendricks,* 3 *John. Cas.* 214; *Bates* v. *Shrœder,* 13 *John.* 260; *Jackson* v. *Hilton,* 16 *id.* 96; *Laws* 1787, *ch.* 47, § 1; *id. ch.* 56, §§ 1, 7; 1 *Gr. Laws N. Y.,* 386; 1 *R. L.* (1801,) 178; 388, § 1, 9; *id.* (1813,) 364; *id.* 500, § 1, 9; *Jackson* v. *Varick,* 7 *Cowen,* 238; *S. C. in error,* 2 *Wend,* 166; *Waters* v. *Stewart,* 1 *Caines' Cas. in Err.* 66; *Jackson* v. *Town,* 4 *Cowen,* 599; *Roe* v. *Griffith,* 1 *Wm. Bl.* 605; *Jones* v. *Roe,* 3 *T. R.* 88; *Doe* v. *Perryn,* 3 *id.* 484; *Keene* v. *Dickson, id.* 495; *Mary Portington's case,* 10 *Rep.* 36; *Jackson* v. *Bull,* 1 *John. Cas.* 81; *Jackson* v. *Murray,* 12 *John. R.* 201; *Jackson* v. *Hoffman,* 9 *Cowen,* 271; *Pelletreau* v. *Jackson,* 11 *Wend.* 110; *S. C. in error,* 13 *id.* 178; *Jackson* v. *Stevens,* 13 *John.* 316; *Trevivan* v. *Lawrance,* 1 *Salk.* 276; *Heard* v. *Hall,* 16 *Pick.* 457; *White* v. *Patten,* 24 *id.* 324.)

(3) The deed to the plaintiff Wendell, if the grantor therein had any thing to convey, would be void on account of the adverse possession of the premises by those holding under the title derived from the mortgage to the commissioners of loans.

(4) But Abraham Vanderheyden had no estate upon which the deed could operate. (*Jackson* v. *Van Zandt, cited supra.*)

*By the Court,* BEARDSLEY, J. Limitations in trust, to pre-serve contingent remainders, were not executed by the statute of uses, the legal estate in such cases remaining in the trustees. (*Fletcher on the Estates of Trustees,* 24, 114; *Willis on Trustees,* 37, 149; *Lewin on Trusts & Trustees,* 2, 4, 7, 21, 102, 3.) These limitations, as the phrase imports, were designed to pre-serve the remainders, while contingent, from being defeated by the destruction or determination, designed or casual, of the par-ticular estate on which they depend, a hazard to which interests of this description are, in various ways, greatly exposed. (2 *Bl. Com.* 171, 2; *Burton on Real Prop.* 246.)

The usual form of these settlements, where they prevail, is to convey the estate for life directly to the person who is to hold and enjoy it for that period, with remainder, for the same time, to trustees and their heirs, in trust to preserve the contingent limitations, and followed by such remainders over as might be declared in the deed or devise by which the settlement was made. (*Bl. Com. supra; Burton, supra;* 2 *Cruise's Dig.* 273, ch. 7; 4 *Kent,* 256, 5*th ed.*) In this form of settlement the ten-ant for life has a legal estate, a remainder of the same character and for the same period, being vested in the trustees. The con-tingent limitations are thus made to depend, in the first instance, upon the estate of the tenant for life, and secondly upon that of the trustees; for if his estate should determine otherwise than by his death, the estate of the trustees would *eo instanti* take effect, and as a particular estate in possession, would support such remain-ders as still depended in contingency. The contingent estates are thus placed beyond the power of the tenant for life, for al-though he may at any time destroy his own estate, he will not thereby defeat the contingent limitations; for instead of depend-ing, as primarily, upon the particular estate of the tenant for life, they thus come to depend upon the legal freehold which at once takes effect, for the same period, in the trustees.

But this is not the only form in which these settlements are

made, for sometimes the estate is conveyed directly to the trustees and their heirs, in trust for the person who is to have its beneficial use and enjoyment for his life, and upon a further trust to preserve the contingent limitations, and with remainders over. These different forms are thus stated and illustrated by Lord Chancellor Eldon, in the case of *Moody* v. *Walters*, (16 *Ves.* 294.) "About the period of 1693, when this settlement was made, the practice of limiting an estate to trustees to preserve contingent remainders was well known. It had prevailed long before; and in the mode of that provision the estate was limited to them in various ways. If the father was tenant for life, then the mode was a limitation from and after the determination of that estate, by forfeiture or otherwise to trustees and their heirs during his life, upon trust to preserve contingent remainders, but nevertheless to permit him to receive the rents and profits; making them trustees during his life of the freehold, if by forfeiture or other determination his estate ceased to exist: that arrangement making him first tenant for life, then the trustees tenants for his life, with a legal remainder to the first and other sons. Another mode is by limiting the legal estate to trustees for the life of the father, in trust for him; with a legal remainder to his first and other sons; and then, as the legal and equitable estates could not unite, he and his son could not suffer a recovery." In the mode last mentioned by Lord Eldon, the beneficial owner for life has but an equitable interest, the legal estate for his life being vested in the trustees. And this is precisely the case now before the court. Mathias, the grandson, was *cestui que trust* of the land for his life, the legal freehold during that time being vested in the trustees. (*Lewin*, 356; *Biscoe* v. *Perkins*, 1 *Ves. & Beame*, 485; *Harris* v. *Pugh*, 4 *Bing.* 335; *Right* v. *Creber* 5 *Barn. & Cress.* 866, *Bailey J.*)

The estates limited in remainder to the sons of Mathias, the grandson, were legal in their nature; his was but an equity; and such dissimilar estates will not coalesce to enlarge the estate of the ancestor from a life interest to a fee, upon the rule established in *Shelley's case.* (*Shelley's case*, 1 *Rep.* 93; *Fearne on Cont. Rem.* 52 *to* 60; 4 *Cruise's Dig.* 369, §§ 25, 6, 7; *Lord Say*

*& Seal* v. *Jones,* 3 *Bro. Parl. Cas.* 113; 1 *Eq. Cas. Abr.* 383 ; *Venables* v. *Morris,* 7 *Durnf. & East,* 342, 438; *Nash* v. *Coates,* 3 *Barn. & Adol.* 839.)

It is therefore quite clear that Mathias, the grandson, was not tenant in tail of these lands; he had but a life interest, and that was an equity. The freehold for his life was in the trustees, with contingent legal limitations, in tail, to the first and other sons of said Mathias.

By this devise the remainder was in the first place limited to the first son of the devisee Mathias. The terms of the limitation are that from and after the decease of said Mathias, the estate is devised "to the first son of the body of the said Mathias, lawfully issuing," and the heirs male of his body, the eldest "and the heirs male of his body being always preferred and to take before any of the younger sons and the heirs male of his body."

When the devisor died his grandson, Mathias, had no son ; but during his life he had several. Of these Dirk M. was the eldest. He was born on the 26th of August, 1783, and died the 5th of February, 1809, without issue. The second son, Henry M., was born on the 25th of May, 1785, and died without issue, the 22d of June, 1820. Mathias junior, the third son, was born the 25th of November, 1788, and survived his father, but died without issue the 23d of November, 1840.

The remainder being limited by this devise to dubious and uncertain persons, was contingent until the birth of Dirk M. in 1783. He answered the description in the will of " the first son of the body of the said Mathias lawfully issuing," and on his birth there was no longer any contingency as to the person who was entitled to the estate in remainder. Dirk M. had a present capacity to take the land devised, and a present right to its enjoyment if the particular estate of the trustees had then terminated by the death of his father; and " the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." (*Fearne,* 216, 217; 2 *Bl. Com.* 169; 2 *Cruise's Dig.* 264, § 8

Vanderheyden *v.* Crandall.

273, §§ 40, 41; 4 *Kent*, 202, 206; 1 *Pow. on Devises, by Jarman*, 184, 5; *Lawrence* v. *Bayard*, 7 *Paige*, 75; *Hawley* v. *James*, 16 *Wendell*, 137; *Doe* v. *Provost*, 4 *John*. 61; *Doe* v. *Perrin*, 3 *Durnf. & East*, 484; *Driver* v. *Frank*, 3 *Maule & Sel*. 37, *Bailey, J.*; *Doe* v. *Prigg*, 8 *Barn. & Cres*. 231; *Right* v. *Creber*, 5 *id*. 866; *Chit. on Des*. 235, 6; *Cornish on Rem*. 98, § 1.)

The terms made use of by the devisor, in this case, that "*from and after*" the decease of the devisee, Mathias, "I devise the same to the first son of the body of the said Mathias," were not intended to indicate the time when the remainder should vest in interest, but the period when it would vest in possession and enjoyment. "Much more effective words," said Dampier, J. in pronouncing an opinion on a similar clause, "have been holden, in some of the cases above cited, not to prevent the vesting of estates." (*Driver* v. *Frank*, 3 *Maule & Sel*. 32; *same case in error*, 6 *Price*, 41; 8 *Taunt*. 468; 3 *Moore*, 519; *Doe* v. *Moore*, 14 *East*, 601; *Bromfield* v. *Crowder*, 1 *New R*. 313; 2 *Cruise's Dig*. 295, 300; *Doe* v. *Norvell*, 1 *Maule & Sel*. 327; *Moore* v. *Lyons*, 25 *Wendell*, 119, 140.)

The remainder being limited to the first son of the body of Mathias, "and to the heirs male of the body of said first son lawfully issuing," an estate tail was created. (1 *Cruise's Dig*. 85, § 12; 2 *Bl. Com*. 109, 112.) On the birth of Dirk M. therefore this remainder in fee tail vested in him.

This was in 1783. On the 12th of July, 1782, an act had been passed which provided, "That in all cases wherein any person or persons would, if this law had not been made, have been seized in fee tail of any lands, tenements or hereditaments, such person or persons shall, in future, be deemed to be seized of the same in fee simple." (3 *R. S. 1st ed. App*. 47.) This statute was repealed by an act passed on the 23d of February, 1786, the first section of which was as follows: "That all estates tail shall be and are hereby abolished; and that in all cases where any person or persons now is, or are, or if the act hereinafter mentioned and repealed," (referring to the aforesaid act of 1782,) "had not been passed, would now be seized in fee

tail of any lands, tenements or hereditaments, such person and persons shall be deemed to be seized of the same in fee simple absolute : *and further*, that in all cases where any person or persons would, if the said act and this present act had not been passed, at any time hereafter become seized in fee tail of any lands, tenements or hereditaments, by virtue of any devise, gift, grant or other conveyance heretofore made, or hereafter to be made, or by any other means whatsoever, such person or persons instead of becoming seized thereof in fee tail, shall be deemed and adjudged to become seized thereof in fee simple absolute." (3 *R. S.* 1*st ed. App.* 48 ; 1 *R. L. of* 1813, *p.* 52.)

The act of 1782 had been passed before the birth of Dirk M., but it was shortly thereafter repealed, and succeeded by the substituted act of 1786. As both were in force during his life so that each might have taken full effect upon the remainder vested in him, (if indeed, both were not restricted in operation and effect to estates in possession,) it is quite unnecessary to inquire how far, if at all, these acts differed from each other. So far as respects the present question it may be assumed that they were identical, or, if not so, the difference was wholly immaterial. Dirk M. might claim the benefit of both these statutes, and if either could change a vested remainder in tail, expectant on an estate for life, into a remainder in fee simple, that change must have taken place in this instance.

It will be observed that this remainder was expectant on the determination of a freehold estate, and the point to be considered is whether either statute changed such a remainder in tail into one in fee simple.

A vested remainder is an *estate*, (*Cornish on Rem.* 113 ;) and the act of 1786 declares " that all estates tail shall be and are hereby abolished." But this clause, comprehensive and emphatic as it certainly is, cannot alone determine the question. So far the statute has not provided a substitute for the estate to be abolished. This is done by what immediately follows ; and in giving a construction to any single part or clause of a statute, its entire provisions should be regarded. Having declared that all estates tail were abolished, the section proceeds

to enact that in all cases where any person then was, or would have been, "seized in fee tail," such person should "be deemed to be seized of the same in fee simple absolute." The statute then does not operate on *all* estates tail, but on those only of which some person is *seized ;* and the precise question we are brought to is, was Dirk M. *seized* of this fee tail remainder.

By the common law the term "*seizin*" imports the having possession of an estate of freehold or inheritance in lands or tenements." (*Chit. on Descents,* 48; *Com. Dig. Seizin, A.* 1; *Co. Lit.* 153, *a ; Burton on Real Property,* 18; *Towle* v. *Ayer,* 8 *N. Hamp. R.* 57.) It is either in deed or in law. (*Co. Lit.* 29, *a.*)

Seizin *in deed* is sometimes called *actual* seizin or seizin *in fact,* for each expression has the same meaning; and it exists where a person is in the actual possession of a freehold estate in lands or tenements corporeal. This seizin may be acquired by one who has a legal right to such an estate, in various ways, as by an entry in person, or by an agent or guardian. The possession of a lessee for years is also, for this purpose, the possession of the owner of the freehold, so that one who has a reversion or remainder in fee expectant upon the determination of a term for years, is in the actual seizin of his estate. (*Com. Dig. Seizin, A.* 1, 2; *Co. Lit.* 15, *a. ; Ratcliff's case,* 3 *Rep.* 42; *Chit. on Des.* 61, 2, 238, 9, 242; *Watkins on Des.* 59, § 2, *Lond. ed.* 1801; *Roscoe on Actions,* 588; *Bushby* v. *Dixon,* 3 *Barn. & Cress.* 298.) There is also what is called a *constructive* seizin in deed, which, for all legal purposes, is equivalent to an actual seizin. (*Green* v. *Liter,* 8 *Cranch,* 244—9.)

Where the law casts the freehold upon a person, he has before exercising any act of ownership over it, what is called a seizin *in law.* Thus, an heir before entry, has but a seizin in law of lands which descend to him. (*Chit. on Des.* 53; *Watkins on Des.* 58.) But if the lands are in lease for a term of years, this, as we have already seen, gives to the heir an actual seizin, the possession of the termor being in law that of the reversioner or remainderman in whom the freehold is vested. In this case, however, the remainder was limited on a freehold

estate for life, and of consequence corporeal possession of it was impracticable. "Strictly speaking," says Cornish in his treatise on remainders, ( *p.* 129,) "there is no seizin of such remainders, for that is in the tenant of the freehold."

It should not be overlooked that the terms seizin in law, and seizin in deed, have in general reference "only to the present and actual corporeal possession of the premises, and not to the fixture of an interest which is to come into actual enjoyment in some future event; and here the word *seizin* is used in its strict sense ; and though we frequently use the term seizin of a remainder or reversion, (expectant upon a freehold,) yet this signifies no more than that the property in them is fixed in the owner; and that such owner is placed in the tenancy. The particular estates, and those expectant upon them, form in law only one estate ; and the delivery of possession to the person taking first extends to all. All therefore may be said to be *seized,* all being placed in the tenancy, and the property being thus fixed in all." ( *Chit. on Des.* 53.) In a note, ( *p.* 55,) the author adds : " *This is often called a seizin in law ;* and thus the seizin in deed of the particular tenant of the freehold, and the seizin in law of the remainderman or reversioner, are supposed to exist together of the same estate; but the seizin, that is the actual corporeal possession, must be postponed to the determination of the particular estate of freehold ; and the remainderman or reversioner cannot in this sense be said to be seized either in law or in deed." To the same effect, Mr. Butler, in a note to *Co. Lit.* says : " When lands of inheritance are carved into different estates, the tenant of the freehold in possession, and the person in remainder or reversion, are equally in the seizin of the fee. But in opposition to what may be termed the expectant nature of the seizin of those in remainder or reversion, the tenant in possession is said to have the actual seizin of the lands." ( *Co. Lit.* 266, *b, note* 217.)

The true principle, whether the estates present and expectant, are created by common law conveyances or by such as derive their effect from the statute of uses or of wills, seems to be that the person in whom the expectant estate vests, has a

seizin in law of his estate; not indeed in the ordinary sense of the term, which imports a present right of possession as well as of property, but in a sense which accords precisely with the fixed rights of the several parties in interest. What are designated as the present and expectant estates, are in truth but different parts of one whole, and form in law but one estate. As to these several parts the owner of each is seized according to his right; the tenant of the present freehold has a seizin in fact, but the owner of an expectant estate, having no present right of possession, has but a seizin in law.

It is surely no new doctrine, sharply as the point was contested on the argument of this cause, that there may be a seizin of a remainder or reversion expectant upon a freehold estate. I know of but one case which denies the position, *Jackson* v. *Strang*, (1 *Hall*, 1, 32;) and not an authority was cited to sustain that opinion. In *Cook* v. *Hammond*, (4 *Mason*, 489,) Judge Story said, " for centuries the language of the law has been, that a reversioner is *seized* of the reversion, although dependant upon an estate for life. Thus in *Plowden*, 191, it was held by the court, that where a reversion is dependant upon an estate for life, the reversioner, in pleading, may state that he is *seized* of the reversion. By this no more is meant, than that he has a fixed vested right of future enjoyment in it." The books, ancient and modern, are full of precedents for pleading a transfer, by purchase or descent, of a remainder or reversion, expectant on a freehold estate; and although they vary in this respect, that some allege a seizin by the party *in his demesne as of fee*, while others simply aver a seizin *as of fee*, they all agree in stating a *seizin* in one form or the other. (*Hearne, Pl.* 837; 3 *Went. Pl.* 502, 3; *Tomlin's Law Dict., Seizin ;* 2 *Ch. Pl.* 7*th Am. ed.* 568 *and notes*, 560 *and notes*, 569 *and notes* ; 3 *id.* 1330 *and notes*, 1365; 2 *Saund.* 235; *Com. Dig. Pleader, C.* 35 ; *Jacob's Law Dict. Seizin ; Arch. Civil Pl.* 121, 125, 227. *See also Wimple* v. *Fonda*, 2 *John.* 288; 4 *Kent*, 202; *Preston on Estates*, 94, 98; *Watkins on Des.* 33, 40 *to* 45, 116, §1.)

This remainder being vested in Dirk M., he was, in the language of the law and in propriety of speech, *seized* thereof. It

was an estate in fee tail when first vested in him, but was changed to a fee simple absolute by the acts to abolish entails.

If the case were not in strictness within the words of these statutes, it might be urged that they should be liberally construed to effectuate the object and intent of the legislature. "These statutes formed an important epoch in our history. They broke into pieces the shackles which had been ingeniously contrived to perpetuate estates in the same family, and thus rendered the alienation of the soil free and unrestrained." (*Lion* v. *Burtiss*, 20 *John. R.* 487.) Statutes having such objects in view should not receive a stinted, narrow construction, but should be expounded so as most speedily and effectually to eradicate the evil. On this principle it was held, although against the grammatical construction of the words used, that the act of 1782 had a prospective operation, and was not restricted to cases existing at its passage. (*Jackson* v. *Van Zandt*, 12 *John. R.* 169.) But the case at bar is within the words of the act of 1786. The remainder in fee tail had vested in Dirk M. and he was therefore seized of it. By the terms of the last mentioned act this estate was abolished, and changed to a fee simple or fee simple absolute, for both mean the same thing. (*Jackson* v. *Van Zandt, supra.*)

Dirk M. thus became seized of a remainder in fee simple, instead of a fee tail. It came to him by devise, he was therefore a purchaser. (3 *Cruise's Dig.* 484, § 19; 6 *id.* 9, § 18.) Being a purchaser, this expectant fee simple, although incapable of an actual corporeal seisin, might pass by descent to his heirs. They would take from him as from a purchaser, and not as the person last actually seized.

It is a well known rule in the law of descents, that a reversion or remainder in fee, expectant on a present freehold estate, will not, during the continuance of such freehold estate, pass by descent from a person in whom title thereto had vested by *descent*, as a new stock of inheritance, unless some act of ownership, which the law regards as equivalent to an actual seizin of a present estate of inheritance, had been exercised by the owner, over such expectant estate. But it is otherwise where the future

estate was acquired by *purchase,* for the purchaser becomes a new stock of descent, and on his death the estate passes directly to his heir at law. This distinction is entirely settled by authority, and it will be found to reconcile various cases which would otherwise seem to be in conflict with each other. (*Cook* v. *Hammond,* 4 *Mason,* 467; *Watkins on Descents,* 9, 10, 33, 34, 56, 59, 116, 137, 139, 148, 153; *Ratcliff's case,* 3 *Rep.* 42; *Doe* v. *Hutton,* 3 *Bos. & Pul.* 643; *Cornish on Rem.* 129; *Chitty on Des.* 52, 54, 238, 239; *Hubback's Ev. of Succession,* 134 *to* 136; 4 *Kent,* 387, 388; 3 *Cruise,* 412, *ch.* 4; 2 *Bl. Com. by Chit.* 209, *note* (10); *Doe* v. *Provost,* 4 *John.* 61; *Note* 76 *to Co. Lit.* 14, *a; Fearne,* 561; *Wimple* v. *Fonda,* 2 *John.* 288; *Jackson* v. *Hendricks,* 3 *John. Ca.* 214; *Bates* v. *Shræder,* 13 *John.* 260; *Jackson* v. *Hilton,* 16 *id.* 96; *Weston* v. *Foster,* 7 *Metcalf,* 297; *Stringer* v. *New,* 9 *Mod.* 363.)

On the death of Dirk M. in 1809, this remainder in fee simple passed by descent to his father, Mathias, the grandson of the devisor. (*Act of* 1786—1 *R. L. of* 1813, *p.* 53.) The father of Dirk M. who thus acquired this estate in remainder, had given a mortgage in fee of those lands in 1792. He was then in possession, and the mortgage contained a covenant that the mortgagor "was lawfully seized of" "a good, sure, perfect, absolute and indefeasible estate of inheritance, and that" said mortgaged premises were free from all former gifts, grants and incumbrances. This mortgage was duly foreclosed in 1799, the premises, on such foreclosure, being sold and conveyed to Albert Pawling. The remainder in fee simple, which vested in the father of Dirk M. on the decease of the latter, enured by way of estoppel, to the benefit of the purchaser at the mortgage sale, Pawling. (*Jackson* v. *Murray,* 12 *John.* 201; *Jackson* v. *Hoffman,* 9 *Cowen,* 271; *Pelletreau* v. *Jackson,* 11 *Wend.* 110; 13 *id.* 178, *in error; Jackson* v. *Matsdorf,* 11 *John.* 91; *Jackson* v. *Wright,* 14 *id.* 193; *Mason* v. *Mancaster,* 9 *Wheat.* 445; *Somes* v. *Skinner,* 3 *Pick.* 52; *White* v. *Patten,* 24 *id.* 324.) It is conceded that the defendant had the title of Pawling, which was a fee simple absolute. The defence was therefore complete.

This disposes of the case, and renders it unnecessary to ex amine the objection founded on the alleged adverse possession of the premises since 1799.

New trial denied.