Van Rensselaer *v.* Poucher.

---

## Van Rensselaer *vs.* Poucher.

The legal term *seizin* has reference to the *estate*, and not to the thing in which the estate exists : to say, therefore, that one is seized of lands, or of lands, tenements and hereditaments, is an elliptical expression, not strictly accurate, though sometimes used to denote the seizin of an estate in the same lands, tenements or hereditaments.

Where the act of 1786, *to abolish entails*, &c. (1 *R. L.* 52, § 1,) enacted "that in all cases where any person or persons now is, or are, or if the act hereinafter mentioned and repealed had not been passed, would now be *seized in fee tail of any lands, tenements or hereditaments*," they should be deemed to be seized thereof in fee simple; the seizin which the legislature had in view was of an *estate* in fee tail, and accordingly the act changed all estates in tail which were then vested in interest, or which thereafter became vested in interest as well as such estates in possession, into estates in fee simple.

Accordingly *held*, (affirming after a second argument the principle decided in *Vanderhcyden* v. *Crandall*, 2 *Denio*, 9,) that the statutes for abolishing entails, operated as well upon vested remainders in tail, as upon estates tail which had taken effect in possession.

And where J. V. R. by a will, which took effect in 1783, devised lands to trustees during the life of the testator's grandson J. to preserve contingent remainders, in trust to permit the grandson to receive the rents and profits during his life, and after his death to his first and every other son, successively in tail male; and the first son of the grandson, who was born after the will took effect, died in the lifetime of his father, without issue; *held* that the remainder which vested in such son at his birth was immediately converted into a remainder in fee simple.

The provision on this subject in the revised statutes, which declares that every *estate* which would be adjudged a fee tail before the statutes abolishing entails, shall hereafter be adjudged a fee simple, (1 *R. S.* 722, § 3,) is not more comprehensive in its effects than the former statutes, but is simply declaratory of the then existing law.

DEMURRER to pleas. The declaration was in covenant. The first count set forth that on the 20th of November, 1759, John Van Rensselaer executed a deed indented of bargain and sale in fee to Andreas Muller, of a certain farm in Claverack, which was described; on condition that Muller and his heirs should pay to Van Rensselaer, his heirs, executors, administrators and assigns, as a yearly rent for said land, the yearly tenth of all the profits thereof, and four fat hens; that Muller, by the same deed covenanted to pay the yearly tenth and the fat hens. It was then averred that Muller entered, and that afterwards, &c. all the estate, &c. of Muller of and in a certain part of the premises granted to Muller, by assignment had lawfully come to and vested in the defendant. The plaintiff further averred that John Van Rensselaer, the grantor, on the 25th May, 1782, made and published his last will and testament in the form required to devise real estate, and thereby, among other things, devised all his right, title and interest in and to the said granted premises, and in and to the rent reserved by the indenture with Muller unto Richard P. Morris and Volkert P. Duow and their heirs, for and during the life of the testator's grandson John J. Van Rensselaer, son of his deceased son Jeremiah, to the intent to support the contingent remainders limited in the same will so that the same might not be destroyed; but in trust nevertheless to permit and suffer him the said John J. Van Rensselaer, the grandson, to receive the rents and profits to and for his own use, during his natural life; and from and after the

Van Rensselaer *v.* Poucher.

decease of him the said John J., the testator devised all his right, title and interest in and to the premises so granted to Muller, and in and to the rents reserved thereon to the first son of the body of the said John J., the grandson of the devisee, lawfully issuing, born or unborn, and to the heirs male of the body of such first son, lawfully issuing; and in default of such issue, then likewise to the second, third, and every other son of the said John J., successively and in remainder, one after the other, as they should be in seniority and priority of birth, and to the several and respective heirs male of the body and bodies of such first, second, third, and other son or sons; the eldest of such sons, and the heirs male of his body, being always preferred and to take before any of the younger sons and the heirs male of his body; that the testator died seized in 1783; that John J. the grandson and devisee, had no son living at the time of making the will or at the death of the testator; but after the death of the said testator the said devisee had a first son, John Van Rensselaer the younger, born to him, who died in the lifetime of his father John J. the grandson and devisee of the testator, on the first day of January, 1814, without ever having had any issue. The plaintiff averred that he, the plaintiff, was the second son of John J. the grandson and devisee of the testator, and that the said plaintiff's father, John J. the grandson and devisee aforesaid, died on the 26th of September, 1828, leaving the plaintiff him surviving, whereby the plaintiff became entitled to the rents from and after the death of his said father, and that the defendant had been in possession of the premises during that time. The plaintiff claimed the rents or yearly tenth of the profits of the farm for eight years, from the death of John J. Van Rensselaer to the first day of January, 1837, which, it was averred, the defendant had neglected and refused to pay. There were two other counts not materially different from the first.

The defendant pleaded three pleas, to each of which the plaintiff demurred, and the defendant joined in demurrer. Each of the pleas disclosed the fact that John J. Van Rensselaer, the grandson of the testator and his devisee, had three

other children besides the plaintiff, who were living at the time of the death of their brother John, the first born son of their father, and all of whom survived their said father, and were living at the time of putting in the pleas. As upon the case thus made, (if it were assumed that the statute abolishing entails was executed in favor of the first born son of John J., the grandson, and that upon his death the estate passed to his father, John J. as his heir,) the plaintiff, as one of the four children of his father, would at his death have inherited an undivided fourth part of the premises, the pleas, to avoid that consequence, set up, by way of estoppel, a conveyance in fee of the premises from John J., the grandson and devisee, to Daniel Penfield, executed in 1795, containing certain covenants respecting the title. The plaintiff's counsel having conceded on the argument that one of several heirs could not maintain covenant on a demise by his ancestor, no further question arose on the pleas; and the discussion turned wholly upon the case made by the declaration.

*C. O'Conor & J. Blunt,* for the plaintiff.

*A. L. Jordan & G. Wood,* for the defendant.

*By the Court,* BEARDSLEY, Ch. J. It was agreed by the counsel for both parties on the argument of this case, that it presented but a single question, and which was admitted to be identical with the main point decided by this court in the case of *Vanderheyden* v. *Crandall,* (2 *Denio,* 9.) We were asked to reconsider that question, because, as suggested, an element indispensable to a right decision, and of itself conclusive on the point, had been overlooked on the argument and in pronouncing judgment in that case. Although a point once solemnly adjudged must, ordinarily, be held conclusive by the same court and so preclude further discussion, we thought it but proper in this case to hear a re-argument of the question; and it was discussed by the counsel for the respective parties, as all who were present will bear witness, with learning and

ability rarely surpassed or equalled. We have attentively con-sidered these arguments, and our minds being made up on the question as now presented and discussed, I will state with all possible brevity the conclusion at which we have arrived, and the main grounds on which it rests.

When the case of *Vanderheyden* v. *Crandall* was before the court, it was argued that there could be no *seizin* of a *re-mainder* in fee tail expectant on an estate for life, when merely vested in interest; that it must first vest in possession, and consequently cease to be a remainder, before the owner could be seized so that the statute would change the estate tail into an estate in fee simple. On the argument of the case at bar, however, it was admitted that a person may be seized of such a remainder when vested in interest only; but it was argued that the seizin required by the act of 1786, to abolish entails, must be a seizin *of lands, tenements or hereditaments,* as dis-tinguished from an *estate* therein, and which as alleged is not the condition of one who is seized of a remainder in tail limited on an estate for life, while it is merely vested in interest.

This seems to us but another form of stating the same ob-jection which was made, argued and overruled in the *Vander-heyden* case; for it amounts only to this, that no person can be so seized as to fall within the provisions of the statute on which the question arises, unless he has *actual* as contradis-tinguished from *legal* seizin of the estate. When actually seized, or seized in *fact,* which is the same thing, the owner, according to the argument in the present case, is seized of the land, tenement or hereditament in which the estate exists, and so is within the statute. Such a seizin can only be had of a present estate in point of enjoyment as well as in interest, and where that exists the owner, as was conceded on the argument of the *Vanderheyden* case, has the seizin required by the stat-ute. According to the argument in that case, the statute works no change in an estate tail until it vests in possession and enjoyment; that is, when *actual* seizin is acquired. And then, as was admitted in the present case, the owner is seized of the land, tenement or hereditament, as distinguished from

seizin of an estate therein. In *Vanderheyden v. Crandall*, the remainderman was said not to be seized, because his estate was future, not present, in point of enjoyment; on which ground, and on which alone, it is now argued that he is not seized of the land, tenement or hereditament in which the estate in remainder exists. In principle we see no difference between these positions. The objection now made, although stated in different words from those used on the argument of the *Vanderheyden* case, seems to us but the same thing, and in substance and effect the very point then overruled by the court.

One error, as we think, in the argument on the part of the plaintiff in this case, and that a fatal one, consists in the supposition that there can be a seizin of lands, tenements or hereditaments, distinct from and irrespective of an estate in such lands, tenements or hereditaments. Seizin, as we understand the term, has reference to the *estate*, and not to the thing in which the estate exists. In strictness therefore, the owner of land, &c. is not seized of the land, &c. but only of an estate therein.

Lands, tenements and hereditaments, are the subjects of real property; the only things in which estates of that nature can exist. An *estate* in land is the interest which the owner has therein. Such estates may greatly vary in quantity or duration, as they also may in respect to the time of possession or enjoyment. As to quantity, they are less than freehold, as terms for years; or freehold, as for life or in fee. The latter class is also divided into estates in fee simple and fee tail. These rules and distinctions are familiar. (1 *Cruise's Dig.* 57, *ch.* 3, *tit.* 1; 2 *Bl. Com.* 16, 103; 1 *Prest. on Est.* 7, 20, 22; 2 *Crabb's Law of Real Prop.* 2, *ch.* 1; *Com. Dig. Estate in Fee Simple, A.* 1.)

The owner of a fee simple estate in possession in land, has all the property therein of which the thing is susceptible. Such an owner is sometimes said to be *seized of the land*, but which only means that the entire property of the land is in him; or in other words, that he is seized in fact of a fee simple estate

therein. So one who has an estate for life, but not in fee in land, although owner of a part only of the entire property, is also said to be seized of the land itself. (*Vanderheyden* v. *Crandall, supra,* 21, 22.) These however, are but forms of speech, and are not strictly accurate; the term seizin, as already stated, has reference to the estate of the person seized, and not to the thing in which such estate exists. It is applicable to freehold estates only, for a person is said to be *possessed,* not *seized* of any less estate. The seizin is of the estate, and according to its quality and quantity. The estate may be present or future in point of enjoyment, for there may be a seizin of each; as it also may be in fee simple, or fee tail, where such estates are not prohibited, or for life.

A seizin *of land* should never be pleaded, but of an *estate* in land. This is conclusively shown by legal authorities on the point. (1 *Ch. Pl. ed. of* 1837, *pp.* 395, 396; 2 *id.* 560, 568, 569, *and notes;* 3 *id.* 1330, 1365; 2 *Saund.* 233, (2,) 235, 236; 2 *Saund. Pl. and Ev.* 561, 562; *Com. Dig. Pleader, E.* 22; *Saunders* v. *Hussey, Lutw.* 1231, 1232, *Carth.* 9, *S. C.; Bonoyon* v. *Palmer,* 5 *Mod.* 72.) It is true the objection to a pleading that it does not allege the *estate* of which the party was seized, can only be made by demurrer, for where seizin of *land,* or of a tenement or hereditament, and not of an *estate* therein, is alleged, the defect is cured by pleading over and a verdict on the issue joined between the parties. This was so held in the case of *Harris* v. *Beavan,* (4 *Bing.* 646. *See also* 1 *Ch. Pl.* 395, 396.) Regularly, however, a seizin of the *estate,* and not of the land, tenement or hereditament in which the estate exists, must be alleged, and the objection to a pleading in the latter form, if made in proper time and manner, will be insuperable.

Bearing in mind that the term seizin has reference to an estate in land, and not to the land itself, we will examine the first section of the act of 23d February, 1786, upon which the question arises. (3 *R. S.* 1*st ed. App.* 48; 1 *R. L. of* 1813, *p.* 52.)

The first clause of the section declares "That all estates

VOL. V.*        6

tail shall be, and are hereby abolished." These words are comprehensive and explicit, and, standing by themselves, their meaning could hardly be mistaken. Estates tail may be future as well as present in point of enjoyment, both of which fall equally within the terms of the clause, and were manifestly intended to be thereby abolished. The section, however, does not stop with merely abolishing estates tail. It was not intended to annihilate property thus held, although its future existence in that form was deemed objectionable; but on the contrary to provide that *it* should, in future, be held and enjoyed by the owner in a modified and improved condition. The section therefore proceeds to declare " that in all cases where any person or persons now is, or are, or if the act hereinafter mentioned and repealed had not been passed, would now be seized in fee tail of any lands, tenements or hereditaments, such person and persons shall be deemed to be seized of the same in fee simple absolute." This clause is confined to what were then—at the time the act was passed—estates tail, or what would have been such estates if the act of 12th of July, 1782, referred to in said clause, had not been passed, and it does not extend to such estates tail as might thereafter be created or spring into existence. These future estates, however, were not overlooked, but were provided for by the next clause of the section, which is in these words: " That in all cases where any person or persons would, if the said act," (meaning the aforesaid act of 1782,) " and the present act had not been passed, at any time hereafter become seized in fee tail of any lands, tenements or hereditaments, by virtue of any devise, gift, grant or other conveyance heretofore made, or hereafter to be made, or by any other means whatsoever, such person and persons, instead of becoming seized thereof in fee tail, shall be deemed and adjudged to become seized thereof in fee simple absolute."

This clause applied directly to the particular estate in question in this case. The devise of Col. John Van Rensselaer, by which an estate tail was limited to the first son of the body of his grandson, John J., was made in 1782. John J. then had no son, nor had he any prior to the passage of the

Van Rensselaer *v.* Poucher.

aforesaid act of 1786. In 1791, however, John Van Rensselaer the younger, the first son of the body of said John J., came into life, and but for the act of 1786, he would then have become seized of the estate tail limited to him in remainder, as it became vested in interest immediately on his birth. ( *Vanderheyden* v. *Crandall, supra*, 18, 19.) But estates tail were abolished, absolutely, and without exception or reservation, by the first clause of the act. John the younger, therefore, could not take an estate tail, as the words of the devise otherwise would have authorized and required; and unless an estate in fee simple was substituted by the last clause of the first section of the act, his right of property under the devise was annihilated by what the legislature had done. A valuable interest was limited to him by the devise, but to be held and enjoyed as an estate tail. When the devise was made that form of estate was entirely legal, although the legislature shortly thereafter thought proper to abolish it. It was not, however, intended thereby to destroy the interest and property so limited. On the contrary, the section declares that " *instead*" of becoming seized in fee tail the owner should become seized in fee simple. The first clause of the section abolished estates tail, and by what follows in the section, estates in fee simple took their place. The entailed estate was thus, in every case, turned into one in fee simple. That which the legislature intended to abolish was the objectionable *estate ;* not the *land*, &c. in which the estate existed. And the substitute was not *land, &c.* but an *estate* in fee simple therein. If the estate abolished was present in point of enjoyment, so would that be which was substituted; and if the former was to vest in possession at some future period, so also would the latter. In short, by the section a complete substitution of one estate for the other was effected; and as estates tail were in all cases to be abolished, so estates in fee simple were in every case to take their place.

Take this section of the statute as it is, a connected and complete provision on a single subject; it should be understood and interpreted as it would be if the words " *an estate in*" were inserted immediately before the words " *any lands, tenements*

or *hereditaments*," where they occur in the section. This is indispensable, for otherwise the provision, at best, would be but partial and altogether incomplete in its effect. By the express words of the section *all* estates tail, future as to possession and enjoyment, as well as those of which the owner had actual seizin, were abolished. This seems to be plain enough, for the sweeping outset of the section declares " that all estates tail shall be, and are hereby abolished." With such a beginning it is but reasonable to expect that some other form of estate would, in every case, be substituted in lieu of that which was abolished. Estates tail, future, as well as present, were regarded as objectionable and were to be suppressed ; but the owner of the obnoxious interest was not looked upon as in fault, nor was he to be punished by the sacrifice of his property. The argument against the opinion of the court in the case of *Vanderheyden* v. *Crandall*, without directly denying or affirming that *all* estates tail were intended to be, and in fact were, abolished by this section of the statute, insists that a fee simple estate is substituted for an estate tail, in that class of cases only where the estate abolished was vested in possession as well as in interest. This would limit the operation of the section to estates tail of which the owner was actually seized ; that is, in the actual possession and enjoyment, and would necessarily exclude the case now before the court. John Van Rensselaer the younger was never seized in fact of the estate tail limited to him by the devise, although it vested in him in interest on his birth.

The argument we are now examining wholly overlooks the first clause of the section, and, in utter defiance of the terms of that clause, assumes that the section is limited and confined in its application to cases where, in the words of the section, a person is " *seized in fee tail of any lands, tenements or hereditaments.*" The whole strength of the argument is made to depend upon the force and meaning of these words. It has already been remarked that in strictness there is no such thing as a seizin of *land ;* the seizin is of an *estate* in the land, and not of the land itself. And although the expression, *seized of*

Van Rensselaer *v.* Poucher.

*land*, is sometimes used, it means only that the party is seized in fact of a present freehold *estate*, which may be for life or in fee, in the land. Strike out of this section therefore, the first clause, and its operation and effect might be limited and confined to estates tail of which the owner was actually seized; that is of what he had actual possession and enjoyment; for in such cases only can a person, with any propriety, be said to have seizin of " *lands, tenements, or hereditaments.*" In strictness, however, there is no seizin of *land ;* and the phrase only imports a present seizin in fact of a freehold *estate.* But to limit the entire section to cases in which there was such a seizin of an estate tail, would make the provision altogether partial and incomplete. And to hold that *all* estates tail were abolished by the section, while in a part of them only a *fee* simple estate was substituted, leads to gross absurdity and injustice. Indeed, as to all owners of estates tail vested in interest but not in possession, such a construction of the section would make it nothing short of legislative robbery : it would abolish and destroy the estate of which the owner was seized, but would fail to substitute any other in its place and stead. But we think the provision is not open to any such construction or reproach. Taking the whole section together, as must be done in order to ascertain its true meaning, and we cannot resist the conclusion that it was intended by the legislature to substitute fee simple estates wherever estates in fee tail were abolished. And as all estates tail of which any person was seized were abolished, so, in every such case, an estate in fee simple became substituted "*instead*" thereof. A remainder in fee tail being displaced, one in fee simple would immediately take its place. This is our view of the section. In 1791, therefore, when the remainder came to vest in John Van Rensselaer the younger, the legislative alchymy took instantaneous effect and transmuted what otherwise would have been an estate tail into one in fee simple. He was not however, thereby seized of the *land*, but of an *estate* in fee simple therein.

That part of the revised statutes which applies to this subject, tends strongly to confirm this interpretation of the first

section of the act of 1786. By the repealing statute of December 10, 1828, the act of 1786, "excepting the second and seventh sections," was repealed, the repeal to take effect from and after the 31st of December, 1829. (3 *R. S.* 2*d ed.* 129.) On the same 10th of December that part of the revised statutes which provides a substitute for the first section of the act of 1786, was passed, to take effect, however, on the first day of January, 1830. (1 *R. S.* 717.) The provision is in these words: "All estates tail are abolished; and every estate which would be adjudged a fee tail, according to the law of the state, as it existed previous to the twelfth day of July, one thousand seven hundred and eighty-two," (that being the date of the first act abolishing estates tail,) "shall hereafter be adjudged a fee simple." (1 *R. S.* 722, § 3.) This provision rather declares the result of previous legislation than creates any rule of law on the subject. It can hardly be said to abolish estates tail, but rather to announce as a fact that they were already abolished. Nor does the provision assume, of itself, to change estates tail into estates in fee simple, but only to declare that every estate which would be adjudged a fee tail according to the law as it stood previous to the passage of the first act by which estates tail were abolished, should thenceforth "*be adjudged a fee simple.*" It does not declare that the tenant in tail should be adjudged to have seizin of the *land,* as is urged to have been the effect of the repealed provision in the act of 1786, but his *estate* tail was to be adjudged an *estate* in fee simple.

So far as respects the point now in question, the revised statutes were not intended to work any alteration in the then law of the state. This is quite obvious from the words of the clause to which reference has been made, and is fully confirmed by a note of the revisers on the subject. (3 *R. S.* 568, 2*d ed.*) The revised statutes therefore may be understood as affirming the accuracy of the construction we here put on the first section of the act of 1786. And in holding that the estate tail in remainder, of John Van Rensselaer the younger, was changed to an estate in fee simple, we do but conform to the express words

Van Rensselaer *v.* Poucher.

of the statute, which declare that every estate which would be adjudged a fee tail, according to the law as it was previous to the 12th of July, 1782, "*shall hereafter be adjudged a fee simple.*" John the younger had an estate which, by the law referred to, would have been adjudged a fee tail; it must now, as the statute directs, be adjudged a fee simple.

The legislation of other states was appealed to on the argument of this cause, with a view to show what must have been the object and design of the legislature in the enactment of the first section of the act of 1786. But no light, as we think, can be derived from that source. The acts passed by different states for the purpose of abolishing estates tail, were by no means in harmony with each other: some required a seizin in fact, and others but a seizin in law, of the estate tail, in order to admit of its being changed to an estate in fee simple. No just inference as to policy or design could be deduced from such discordant legislation, even if it were admissible to infer the intent of the legislature of this state, expressed in their own words, from what was done on a similar subject by the legislatures of other states.* This act of 1786 must be construed as other acts are, by the terms used and the apparent object, and not upon any vague conjecture as to what was intended by the legislature.

We think the case of *Vanderheyden* v. *Crandall* was rightly decided, and it must be followed. The defendant is entitled to judgment on the demurrer, with leave to amend on the usual terms.

Ordered accordingly

* For the recent legislation of the British Parliament on this subject, see the act of 3 & 4 *Wm.* 4, *ch.* 74; 1 *Steph. Com.* 514, 530 *to* 534; 2 *Sug. on Vend. 6th Amsr. from* 10*th Lond. ed. p.* 268, *et supra*; 3 *id. p.* 397.