## SUPREME COURT.

TOWNSHEND agt. THE REGISTER OF DEEDS OF NEW YORK.

A requisition made upon a register of deeds or county clerk, "to search the records in their respective offices, and certify the title of A— B—, as it appears on and from said records, to certain pieces of land (describing them), and also to search and certify the incumbrances on said pieces of land," is sufficient to compel those officers, upon payment of their legal fees, to perform that duty so far as it concerns the title and incumbrances of A— B—.

If the applicant wishes for a further search he must make out a further requisition, and so on, as far as required. If, however, he wishes to avoid repeated requisitions, he can first examine the records himself (free of charge) and frame a requisition so as to embrace the whole case at once.

Those officers have no authority to charge fees for a search which the party makes himself. The law allows none.

*New York Special Term, December* 1852. This was a motion calling on the register of deeds in and for the city and county of New York, to show cause why a mandamus should not issue commanding him to make a search. It appeared by the

affidavits, that a request was delivered to the register in the form following: " I require you to search the records in your office, and certify the title of Edward Wigfall, as it appears on and from said records, to the pieces of land hereafter described, and also to search and certify the incumbrances on said pieces of land." Then follows a description of the property. The register objected to make the search on the grounds, among others, that the request was not in the usual form; that to make such a search would entail great labor on the register, and that the request ought to state the name of each party, against whom the search was required, and the period during which such search was to be made

——————, *for Plaintiff.*

——————, *for Defendant.*

ROOSEVELT, Justice.—This is an application for a mandamus, against the register of deeds, to compel him to "search the records in his office and certify the title, as there appearing, of one Edward T. Wigfall," to certain lots of land, fully described, in Eighty-fifth and Eighty-eighth streets in the city of New York. Mr. Townshend, who applies for the writ, complains that the Register while forbidding him, Townshend, from searching for himself, unless he paid a fee of five cents for every year searched, refused to comply with a written requisition to do it officially, although tendered full fees for the service. The register objects that the requisition was too general; that it was a very inconvenient departure from the uniform practice of giving the particular names and dates in respect of which the search was to be made; that the records consist of more than one thousand volumes, and that it would be impossible for the force allowed in the office to perform its duties if they were to be called upon to ininvestigate titles, and virtually to discharge the functions of counsel. Titles, too, it is contended, and truly, depend not upon deeds and mortgages only, but upon wills and intestate descents upon deaths, marriages, relationship, alienisms, changes of description and other matters, none of which are recorded in the register's office. How, then, it is asked, can he be expected to " certify the title" of real estate? He may search for a specified

period in respect of a specified piece of property, against specified individuals, for deeds or mortgages from or to them—and even that, in the voluminous condition of the records of this city, is not unfrequently a very tedious and difficult operation—a general search is nearly or quite impracticable. The applicant, however, contends that whatever may be the difficulty, it is nevertheless the duty of the register to perform the service; and he cites the language of the act of 1849 (§ 13) as fully justifying the form of this particular requisition. That act, in prescribing the fees to be thereafter allowed to clerks of counties and registers of cities, declares that they shall charge " for searching and certifying the title of and incumbrance upon real estate, the sum of ten cents for each conveyance and incumbrance certified; provided that such fees shall in no case amount to less than fifty cents, nor more than five dollars." The previous law, as compared in the Revised Statutes of 1830, gave the clerks and registers " five cents for each year, for searching the records in their office," saying nothing about certifying titles. And the change of language, it is contended, was designed not merely to effect a change in the rate of compensation, but in the duties which the officer was to perform. Such a mode of interpretation is not consistent with the rules laid down for determining the effect of statutes or any other written documents. Still it can not be denied that the expressions used in the act of 1840 assume that it was at the time, and was to continue to be the duty of the register " to search and certify titles and incumbrances." What, then, is the fair practical meaning of those expressions? Can A, about buying a certain lot of land from B, who professes to be the owner, go to the register's office and require him to search the title of B to the lot in question, giving merely the name of the alleged owner, and a suitable description of the lot to be conveyed? The register certainly can take the indexes, which the law requires him to make and keep in his office, and search back under the letter B, for grantees of the lot. If he finds no conveyance to B, that, so far as respects the register's duty under the requisition, ends the search, and entitles him to his fifty cents; he certifying that on the records in the office B has no title. If he finds, on the contary, a conveyance to B, he then searches in

Townshend agt. Register of New York.

the index of grantors and mortgagors from the date of such conveyance to the time of search, and certifies according to the result, whether B, subsequent to his acquiring the title, has conveyed or incumbered the premises. Here, again, he would have earned his additional fees, and his duty under the requisition would have terminated. If the party applying wished for further details, he must make out a further requisition; and so on, from time to time, paying the fees, until he has received all the information the case called for and the records could supply. Has the act of December 14, 1847, changed this view of the subject? That act (§ 40) provides that it shall be the duty of the register to "search the records, and to certify to the correctness of such searches when required to do so, and on the payment, or offer to pay, the fees chargeable by law for such services." It also declares that any refusal or neglect to perform this duty shall be deemed a misdemeanor. This language, it seems to me, so far as it relates to the nature of the duty to be performed by the Register, is substantially the same as that of the previous enactments; or if not, it must be deemed declaratory of their true meaning. What, then, are we to understand by the terms, "searching the records?" Precisely, it seems to me, what has already been explained; that is ascertaining, as in the present case, who conveyed to Wigfall, and when and whether he has conveyed or encumbered his title since. Had the register made such a search and reduced it to writing, certifying to its correctness he would have discharged his duty, he would have searched and certified to the title of Wigfall and the incumbrances thereon. If the applicant then wished to go further, and trace the title of Wigfall's grantor, he would have been compelled to present an additional requisition. A duty, the non-performance of which is made a misdemeanor, is to be interpreted, if not strictly, at least not with latitudinarian comprehensiveness. The interpretation above given, while satisfying, as it appears to me, the words of the law, whether we take the Revised Statutes, the act of 1840, or the act of 1847, seems also to be consonant with reason and convenience. If the applicant wishes to avoid repeated requisitions, he can first examine the records for himself, and with the information thus obtained, in connection with other facts not

there appearing, can frame a requisition sufficiently specific to embrace the whole case at once. But it is said, he is not bound to submit to the double charge. And this brings up the question, can the register charge for a search which the party makes himself? I think he can not. The law is positive (2 *R. S.* 650) that no fee shall be demanded for any service unless actually rendered. And in defining the rate of fees, the old fee bill of 1830 (1 *R. S.* 638, § 30) heads the section with the words "Fees of Clerks, &c., and Register of Deeds, for any of the services hereinafter specified," enumerating among such services, ' searching the records.' The act, too, of 1840 (§ 13), changing the rates, instead of the fees then allowed, gave ten cents "for each conveyance and incumbrance certified by him." And that was to be, and now is, the compensation for searching and certifying the title;" meaning, of course, for a service rendered by the register. In 1847, the legislature changed the office into one with a fixed salary, to be paid out of the city treasury; at the same time making it the register's duty to pay into that depository "all the fees, perquisites and emoluments which he was by law permitted or entitled to take for all official services whatsoever, rendered by him." If, then, the register may now charge for searching the records when done by the party himself, it will follow that he may charge fees without accounting, on the plea that they are for a liberty granted, and not for an official service rendered by him; thus defeating the whole policy of the act, which, in its own language was to provide a fixed salary, " in lieu of all fees, &c., for his compensation for all services whatsoever, which he may perform as such register, or by virtue of his office." The register says it is the practice of the office to allow gentlemen of the bar to search the records, as preliminary to a requisition, without charge. The applicant, however, is not bound (even if allowable) to accept the permission as a favor. Nor has the register, since 1847, any such dispensing power. If the office be entitled to fees where the citizen makes the search, the register must exact them for the benefit of the city. " Gentlemen of the bar," in that respect, stand on the same footing as any other gentlemen, and persons making a search, as preliminary to a requisition, on the same footing as persons searching with a final

Townshend agt. Register of New York.

or any other view.   Either the register is entitled to fees on searching the records by another, or he is not.   If he is, he can not waive them; if he is not, exemption is no privilege.   The register puts his claim to charge in such cases, on that section of the Revised Statutes which made it his duty to attach indexes to the records, and which at the same time declared that such indexes, "together with such books, should at all proper times be open for the inspection of any person paying therefor the fees allowed by law " (2 R. S. 286).   There is a seeming inconsistency between this provision and others already cited.   The fees allowed by law, as already shown, are not for permission to inspect by the applicant, but for the service, to be rendered by the officer himself, " searching the records."   These certainly are not synonymous ideas.   If the applicant makes the search, the service, as the law expresses it, is performed by him and not by the register.   The Revised Statutes then step in, as already shown, and declare that no fee or compensation by law, shall be demanded or received by any officer or person for any service, unless such service was actually rendered by him.   The law consequently allows no fee where the applicant does the service for himself, and the right to inspect, in other words to search the records on paying therefor the fees allowed by law, is a right to inspect or search on paying no fees at all.   Were there any doubt, however, on this point under the Revised Statutes, as they stood in 1830, the subsequent acts already referred to, passed in 1840 and 1847, must be considered as entirely removing it.   My conclusion is, that the requisition in the present case was sufficiently specific; that a limited answer, covering the record title of Wigfall only, would be a legal compliance with it, and can be readily made; and that if the applicant wishes the title of Wigfall's grantors he must either direct a further search, or make an examination himself, which he may do as a right, without charge, or amend his present requisition so as to render it special and comprehensive enough to cover all points of inquiry within the range of the register's office.