## JOHN TOWNSHEND *v.* GARRETT DYCKMAN.

Moneys illegally exacted by the register of the city of New York, as a condition upon which alone he will permit an inspection of the index to the records in his custody, may be recovered back.

A payment to him of an illegal fee, upon his refusal to permit an inspection of the records without it, is not a "voluntary payment" in the eye of the law.

In such case, the register cannot protect himself, by averring that he acted as the agent of the city of New York, and has paid the illegal fee into the city treasury.

He has no authority from the city to make any but legal charges; and if he exceed such authority, he is personally responsible.

Whether any fee, for permitting a person to search in the records, when no actual search is made by the register, is given in the fee bill; (2 R. S. 638, § 40, [§ 30 ;] *quere ?*

If not, then such fee is not "allowed by law," within the meaning of 2 R. S., p. 473, § 50, 4th ed.

The words, "allowed by law," in that statute, import some specific provision by law for the service rendered.

UPON proof of the facts, stated in the opinion of this court on the appeal, the plaintiff recovered a judgment against the defendant, in the Fifth District Court of the city of New York, for *five cents,* the amount claimed in the complaint, and three dollars costs. The defendant appealed.

*Robert J. Dillon,* for the appellant.

I. No cause of action was made out on the trial of this case against this defendant. This point is well taken. If we assume that the defendant's demand of five cents was illegal, no right of action against the defendant accrued to the plaintiff by the payment of the sum demanded. If the action could be sustained at all, it could only be against the *corporation,* whose servant the defendant was. It was proved that the money was paid into the city treasury by the defendant.

Townshend *v.* Dyckman.

2. There was no evidence on said trial tending to show that this defendant ever received the money, for the recovery of which the action was brought. The evidence *is*, that the money was paid into the city treasury by the defendant. The statute of 1847, chap. 432, section 1, declares that the fees, &c., of the register, "*shall belong to, and be for the benefit of the city and county of New York;*" and the same statute makes it the *duty* of the register to collect the fees and pay them into the treasury. In discharging this duty, the register acts as the agent or servant of the corporation. It cannot be said that the register received the money. Legally speaking, the city treasury received it, the register merely taking it, as a clerk would take money for goods sold in his master's store, and then depositing it where he was required to. (Laws of 1847, vol. 2, p. 560.)

3. An action for money had and received will not lie to recover back money from a party who never had the money. The action for money had and received *is* an equitable action. (*Buel* v. *Boughton*, 2 Denio, 91.) And the question always is, To whom does the money belong? (2 Denio, 91.) In this case the money belonged to the corporation, and there would be no equity in making the defendant pay it back, for he never had it. The defendant collected the money, and paid it into the treasury, by directions of his superiors, and it cannot be recovered back in an action against him. (*Potter* v. *Bemis*, 1 Johns. 515.)

4. The register of the city and county of New York is obliged to collect the fee collected by this defendant in this case. The statute laws of 1847, vol. 2, p. 560, sec. 1, already cited, make it obligatory on the register to collect the fee he did in this case. That statute says the register "*shall*" collect, &c.

5. The said fee is allowed by law. The Revised Statutes, vol. 2, p. 473, section 50, 4th edition, makes it the *duty* of the register to keep books, "in which deeds or mortgages shall be recorded, and an index to the matters contained in such books," "*which, together with such books, shall, at all proper*

*times, be open for the inspection of any person paying therefor the fees allowed by law.*" The fee allowed by law in this case was five cents. (2 Revised Statutes, 827, section 9, 4th edition.)

It will not be pretended that the charge was improper, if the register had made the search himself, for it is provided "*by law*," in the statute last cited, that "such a charge may be made." It is in the *fee bill.* Now the charge was made pursuant to 2 Rev. Stat. 473, section 50, already cited, which *is not* in the fee bill; and it is expressly decided in *Supervisors* v. *Briggs*, 2 Denio, 41, that the statute on which the respondent will rely, viz., 2 Rev. Stat. 839, section 6, 4th edition, "*has nothing to do with charges for any service not coming within the fee bill.*" Bronson, J., gave the opinion in this case, (2 Denio, 41,) and it is the settled law established by the old Supreme Court. As to the correctness of this decision, the appellant maintains there can be no doubt. He insists, therefore, that this point is established beyond controversy.

6. The payment by the plaintiff was a voluntary payment, made under a claim of right on the part of the defendant, without duress or compulsion on the part of the defendant, and cannot be recovered back. (*Supervisors* v. *Briggs*, 2 Denio, 26; *Clarke* v. *Dutcher*, 9 Cowen, 674; *Mowatt* v. *Wright*, 1 Wend. 356; *Clinton* v. *Strong*, 9 Johns. 370.) These cases all hold that money voluntarily paid on a claim of right, and where there is no mistake in matters of fact, cannot be recovered back. Many other cases might be cited to sustain this point, but these are deemed amply sufficient.

The claim of Dyckman was a claim of right, as we have shown, and was paid by Townshend without duress or compulsion, and cannot be recovered back.

7. The judgment was erroneous in law and fact, and should be reversed. It was an error of law to hold the register liable at all, since the suit should have been against the corporation, if against any one. The register acted in the line of his duty, as an officer, in collecting the money.

His acts were not personal but public. He is not liable. (*Olney* v. *Wickes*, 18 Johns. 123.) The judgment should be reversed.

*John Townshend*, respondent, in person.

It is admitted, that if the appellant can show either that the fee taken was authorized by law, or that the fee, if illegal, was, in a legal sense, voluntarily paid, then the justice ought to have decided in his favor.

The respondent, however, undertakes to show, that the fee taken *was illegal*, and that the payment *was not* voluntary. It must be conceded, that the appellant cannot lawfully demand any fee, unless the right to do so is conferred by some statutory enactment, (2 R. S. 4th ed. 839, § 5,) and it is his duty to point out the statute which confers the right. This he has not done, and cannot do. To ascertain whether or not the appellant was entitled to any fee, it is material to refer to the evidence before the justice.

On reference to the evidence, it will be observed that the fee claimed and paid was *five cents*. That was not claimed for any services rendered by the appellant to the respondent, but was claimed for allowing the respondent himself to inspect the *index of mortgages*.

Now, not only is no such fee (in any case) allowed by law, but the fees allowed by law are only allowed in cases where the service is actually performed by the register or county clerk; and so pointed is the law in this latter respect, that it makes it a misdemeanor in any officer taking fees for services not actually performed. (2 R. S. 4th ed. p. 839, § 7.)

It is true, that by 2 R. S. 4th ed. p. 473, § 50, it is made the duty of the register and county clerk to keep books, &c., which are to be open for inspection on payment of the fees allowed by law; yet no fees are allowed by law, for the fees allowed by law (2 R. S. 4th ed. p. 827, § 9,) are only allowed for *services* actually rendered; yet, even if the service had been rendered, five cents is not a lawful fee; that

fee was abrogated by laws of 1840, cap. 342, p. 287.   (*Trustees of Wilson Coll. Ins.* v. *Van Horne,* 3 Denio, 171.)   Added to this, by the laws of 1812 and 1813, not repealed, it is declared that the indices in the register's office are to be open to all; "to which books of registry and indexes all persons shall have free access for search, at all reasonable times during the day time, and which the said register shall be bound to exhibit to those who wish to search."

See laws relating to the city of New York, p. 699, § 6, and p. 179, § 4; and see *Townshend* v. *Register of Deeds of New York,* 7 Howard Prac. R. 318.   As, then, the law gives no fee, the demand and receipt of a fee by the appellant was a wrongful act, and unless the payment was voluntarily made, the respondent had a right to recover it by action against either the corporation or the appellant.

The payment was not voluntary.   At the time of the demand and payment, the appellant and respondent were not on an equal footing.   The appellant was the lawful custodian of the book to which the respondent required access.   The appellant did not *absolutely* refuse access to the respondent— it was a conditional refusal.   He testified, "I (the appellant) took the book from him (the respondent) ; I refused to allow him to make the search *till* he paid the five cents ; it was after that that the five cents were paid."   Does it not appear from this, that the appellant "had the power of saying to the respondent, That which you require shall not be done except on the conditions I impose," and that the appellant did say this, and that, not until after he said this, was the money paid.   Under such circumstances the payment was not voluntary.   (Per Abbott, J., *Morgan* v. *Palmer,* 2 Barn. & Cress. 735.)   The last case seems on all fours with the present, and seems clearly to establish that the payment was not voluntary.   So in *Maxwell* v. *Griswold,* 10 How. U. S. R. 242, it is said, in order to constitute an involuntary payment, so that the money may be recovered back, it need not be made under actual violence or physical duress ; and see *Otis* v. *Hudson,* 5 Eng. Law and Eq. R. 469, also a very

Townshend *v.* Dyckman.

strong case in favor of the respondent. (*Parker* v. *Gt. West. R. R. Co.*, 7 Scott N. R. 835 ; S. C., 8 Jurist, 194 ; 7 M. & Gr. 253 ; and see Burrill's Law Dict., Tit. Voluntary.) This case is clearly distinguishable from the large class of cases in which it has been held that the action will not lie where a payment is made under color of legal process, where the party paying was cognizant of the law and the fact. For in the first case it is not to be presumed that "a person of whom an illegal fee is claimed, knows it to be illegal ;" (*Dew* v. *Parsons*, 1 Chitty, 295 ;) and in the next place, where the claim is by legal process, the party of whom it is demanded may as well assert his own liability in that action as by paying the claim, and bringing a fresh action for its recovery. It will be readily seen, that if such fresh action were allowed, there would be nothing to prevent the defendant in the second action paying the amount claimed, and then suing in a third action for its recovery, and so alternating *ad infinitum*. But see the position of the respondent in this case. The appellant has the lawful possession of the book to which he, the respondent, desires access; the appellant denies him access, not *wholly*, but *conditionally*. What was the respondent to do, in order to obtain access? Clearly, only one of two courses was open to him, either to apply for a mandamus, or, to do as he did, pay the fee and sue. He was not entitled to a mandamus; that is a remedy only granted where the object to be attained cannot be otherwise obtained. The refusal was not absolute, and the court will only command an act to be done, and not as to the *manner* in which it is to be done. (Tappan on Mandamus, p. 30, Title act of Parliament.) And a mandamus will not be granted, where, by bringing an action, the right to a fee may be tried. (Tappan on Mandamus, p. 21.)

As the respondent had a right to inspect the book, he had a *quasi* property in the book, and the withholding of it by the appellant brought the case within the class where payment is made to get possession of property unjustly detained.

To pay the fee demanded was the respondent's only alternative, and the payment was certainly not voluntary. As the demand was wrongful and the payment involuntary, the respondent had a cause of action against somebody, and that somebody must have been a person between whom and the respondent there existed a privity. (4 Barn. & Ad. 612, Parker, J.; Stephen's Nisi Prius, Assumpsit, ed. of 1844, p. 332 [333].)

Was there any privity between the respondent and the corporation? No.

Was there between the respondent and the appellant? Yes.

It is true the appellant was bound by law to collect the *legal* fees appertaining to his office, and that he was bound to pay over such *legal* fees to the city treasury. He received *legal* fees as the agent of the city, but he was *not bound* either to *collect* or *pay over illegal fees*, and he *did not* receive illegal fees as the agent of the corporation. The receipt of illegal fees was a wrongful act—*deters* his agency; for a fee so received he was personally responsible, and his paying it to the corporation was voluntary on his part, and does not render him the less nor the corporation the more liable, than if no such payment had been made by him. (*Tugman* v. *Hopkins*, 4 M. & Gr. 383; *Calland* v. *Lloyd*, 6 M. & W. 26; *Ripley* v. *Gelston*, 9 Johns. 201.)

The respondent hopes to have satisfied the court that the fee was illegal, the payment involuntary and the appellant the proper person to be sued.

Now as to the authorities cited by the appellant. *Buel* v. *Boughton*, 2 Denio, 91, is clearly a case of voluntary payment. (*Potter* v. *Berries*, 1 Johns. 515.) The circumstances under which the action was brought are not stated, except that there was no specific charge of mal-conduct on the part of the party sued. It may be presumed, therefore, that he received the money within the scope of his authority, and the liability, if any, was with his principal. (*Supervisors*, *&c.,* v. *Briggs*, 2 Denio, 26.) There the payment was clearly

voluntary. The parties might have resisted the claim in the first instance. There was no reason why they should pay and then sue. (*Clark* v. *Dutcher*, 9 Cowen, 674; *Mowatt* v. *Wright*, 1 Wend. 356.) The payments were clearly voluntary. *Clinton* v. *Strong*, 9 Johns. 370, supports the principle contended for by the respondent. (*Olney* v. *Wickes*, 18 Johns. 123.) The action is on contract, and is within a different principle from this present, which is *ex delicto*. A party cannot do wrong, and exculpate himself by saying that he acted as agent.

By the Court. Woodruff, J.—This action was brought to recover from the defendant five cents, paid by the plaintiff to him, under the following circumstances: The defendant, being register of the city and county of New York, and as such having the custody and control of the records of conveyances and mortgages and the volumes of the index thereto, required the payment of five cents as a condition upon which alone he would permit the defendant to examine the index to the books of records in his office, for one year, and upon the plaintiff's attempting to examine one of the volumes of the index, for the purpose of such examination, the defendant forcibly took it from him, and refused to allow the plaintiff to inspect such index until the five cents were paid. The plaintiff then paid the amount, and brought this action to recover back the amount paid, and judgment being rendered in the plaintiff's favor below, the defendant appeals to this court.

We are saved the necessity of examining the question, whether there is any thing in the fee bill regulating the fees of the register, (2 Revised Statutes, 638, § 40, [§ 30,]) which authorized the register to make this charge of five cents.

The appellant's counsel not only concede but *insist* that the subject of this particular charge, (*i. e.*, an application by a person to be permitted to make an examination himself in the index,) is not embraced in that statute. The respondent of course insists, that no warrant for the charge can be found

in that statute. When both parties agree on the subject, we cannot be expected to inquire whether they are right or not, where no parties but themselves will be affected by our decision. (See opinion of Roosevelt, J., in *Townshend* v. *This Defendant*, 7 How. Pr. Rep. 318.) (*a*)

Assuming, then, that the statute referred to did not warrant the charge; the only statute under which it can be sustained, and the only statute under which it is sought to be sustained, is section 50 of 2 Revised Statutes, (4th ed.) p. 473, which requires the register to keep books in which deeds and mortgages shall be recorded, and an index thereto, which index shall, at all proper times, be open for the inspection of *any person* paying therefor the fees *allowed by law.*

If, then, there is no law specifying such a charge, (and unless it is found in the fee bill, none is suggested to us,) no fees are allowed by law for a search made by any other person than the register himself and his assistants.

I am clearly of opinion, that the act of 1840, chap. 342, § 13, does not authorize it. Nor was the charge made according to the rates specified in that section.

It is agreed, that the statute which prohibits the taking

---

(*a*) NOTE BY REPORTER.—In November, 1852, the plaintiff, Townshend, delivered to the defendant, who was the register of deeds of the city of New York, a written requisition "to search the records in his office, and certify the title of Edward Wigfall, as it appears on and from said records, to the pieces of land hereafter described, and also to search and certify the incumbrances on said pieces of land." A description of the property was written at the foot of the requisition. The register objected, on the grounds, among others, that the search was not in the usual form; that to make such a search would impose great labor upon him, and that the request ought to state the name of each party against whom the search was required, and the period during which the search was to be made. The plaintiff having applied to the Supreme Court for a mandamus to the register, Mr. Justice ROOSEVELT held, that the requisition was sufficiently specific; that a limited answer, covering the record title of Wigfall only, would be a legal compliance with it; and that, if the appellant wished the title of Wigfall's grantors, he must either direct a further search, or make an examination himself, which he might do as a right, *without charge*, or amend his present requisition so as to render it special and comprehensive enough to cover all points of inquiry within the range of the register's office.

Townshend *v.* Dyckman.

illegal fees, applies only to services mentioned in the fee bill, (*Supervisors of Onondaga* v. *Briggs*, 2 Denio, 24,) and the defendant contends that, as permitting a person to inspect the index, is not a service mentioned in the fee bill, therefore the register is *allowed* by law to make the charge in question.

This is in effect saying that he is "allowed by law" to charge whatever fees he may think proper for permitting an inspection of the index, because no statute other than the above § 50 expressly prohibits it; or if the claim does not go so far as to leave the amount of charge to the mere discretion of the register, it leaves the amount to be settled by the value of the privilege granted. This is not the meaning of the term, "allowed by law," in the statute. The legislature were making a modification of the law regulating the duties of the register, and they used those words to render it clear that the fees allowed by law were to be still continued. It seems to me that they used the words under a conviction that fees were allowed affirmatively by the laws then existing, for the duties mentioned; but it is here conceded by counsel, that if the words were used under such conviction, the legislature were mistaken. If that be so, this must be a case omitted by the previous statutes, and the register was not entitled to make the charge.

But it is urged, that this was a voluntary payment. The plaintiff had a clear legal right to inspect this index, and if the defendant, having the possession and control thereof, made use of his official authority, and under cover thereof exacted fees to which he had no legal claim, the payment was not a voluntary payment, but a payment by compulsion. If there was no authority to make the charge, its exaction was coercion as truly as if the register were to refuse to record a deed or render a service, upon the prompt rendering of which the security, not only of millions of property, but oftentimes very important rights of persons, depends, and which it is his plain duty to render. Such an abuse of official power, and of his control over public records, which

he alone has in virtue of his public office, is, to my mind, coercion of a very efficient character.

In this respect this is like the cases, *Ripley* v. *Gelston*, 9 Johns. 203; *Clinton* v. *Strong*, Ib. 369; *Frye* v. *Lockwood*, 4 Cowen, 454; and *Parker* v. *The Great Western Railroad Co.*, 7 M. & Gr. 253. See, also, *Snowder* v. *Dans*, 1 Taunt. 358; *Oatis* v. *Hudson*, 5 Eng. L. and Eq. R. 469.

And the same cases dispose of the argument, that the defendant having received the money and paid it over to the city treasury, acting, as is claimed therein, as the agent of the city, is not himself liable. His agency did not extend to the exaction of any fees, except such as by law he was entitled to charge.

The protection of an agent does not extend to an illegal exaction by the agent, without express direction from his principal to require the specific payment, even if such express direction would protect him.

I think the judgment, upon the concessions made by the counsel respectively, should be affirmed.

Judgment affirmed, with interest and costs of appeal; total, $19 30.